[Civ. No. 34667. Second Dist., Div. Four. May 14, 1970.]

CENTURY PLAZA HOTEL COMPANY, Plaintiff and Appellant, v. CITY OF LOS ANGELES et al., Defendants and Respondents.

## COUNSEL

O'Melveny & Myers, Pierce Works, Allyn O. Kreps and Stanley H. Williams for Plaintiff and Appellant.

Jefferson E. Peyser and Albert G. Evans as Amici Curiae on behalf of Plaintiff and Appellant.

Roger Arnebergh, City Attorney, Bourke Jones and James A. Doherty, Assistant City Attorneys, for Defendants and Respondents.

## OPINION

DUNN, J.—By its taxpayers' action (Code Civ. Proc., § 526a), plaintiff sought to enjoin defendants from the enforcement of ordinance No. 136,900 and for a ruling regarding validity of the ordinance, which was enacted by defendant city to become operative October 1, 1968. The parties stipulated to the few facts necessary to a decision and brief additional testimony was received, following which the trial court held the ordinance was valid. Plaintiff appeals.

The ordinance, a so-called "tipplers' tax," added section 21.5.03.1 to the Los Angeles Municipal Code, imposing an excise tax of 5 percent upon the purchase price of alcoholic beverages sold by a retailer for consumption on the premises where sold.[1]

---

[1] The pertinent parts of ordinance 136,900 state: "Section 1. Section 21.5.03.1 is hereby added to the Los Angeles Municipal Code to read as follows:
"Sec. 21.5.03.1. Excise Tax—Alcoholic Beverages.
"(a) In addition to the tax imposed under Sec. 21.5.03, an excise tax is hereby

## I. *Does the Ordinance Infringe Upon the State's Constitutional Right to Regulate Alcoholic Beverage Sales?*

Appellant argues that the ordinance imposes a special local tax on the retail sale of alcoholic beverages and contends that, since there is no limit upon the amount of tax which could be imposed[2] and it could be increased until virtually prohibitory, the effect is to regulate alcoholic beverage sales. Regulation of this type is reserved to the state. So goes the argument.

Article XX, section 22 of the state Constitution provides in part: "The State of California . . . shall have the exclusive right and power to license and regulate the . . . sale [and] purchase . . . of alcoholic beverages within the State . . . . All alcoholic beverages may be bought, sold, served, consumed and otherwise disposed of in premises which shall be licensed as provided by the Legislature . . . . The Department of Alcoholic Beverage Control shall have the exclusive power . . . to license the . . . sale of alcoholic beverages . . . and to collect license fees or occupation taxes on account thereof . . . . The State Board of Equalization shall assess and collect such excise taxes as . . . may be imposed by the Legislature on account of the . . . sale of alcoholic beverages in this State."

This section was first adopted by initiative in 1932 and acquired its present form by amendments in 1934, 1954 and 1956. Appellant cites us to the legal history of this section (and see: *Hammond* v. *McDonald* (1939) 32 Cal.App.2d 187 [89 P.2d 407]) and the official arguments made for and against enactment pointing out that, before Prohibition, California permitted municipalities to bar the sale or consumption of alcoholic beverages

---

imposed on the purchase by any person of an alcoholic beverage from any retailer in the City of Los Angeles for consumption on the premises where sold.

"(b) The tax shall be at the rate of five percent of the purchase price. The purchase price, however, shall not include the amount of any State or local use tax charged or the amount of any State or local sales tax reimbursement charged as part of the purchase price.

"(c) 'Alcoholic beverage' shall have, for the purpose of this section, the same meaning as provided in Sec. 23004 of the Business and Professions Code.

"(d) 'Retailer' shall mean an on-sale licensee as provided in Sec. 23023 of the Business and Professions Code.

"(e) The tax imposed under this section shall be paid by the person purchasing the alcohol beverage, and shall be collected from him by the retailer and remitted to the City Clerk in the same manner as other taxes imposed under this Article are collected and remitted. The City Clerk shall administer and enforce the tax imposed under this section in the same manner as other taxes imposed under this Article are administered and enforced."

[2]Appellant cites *Fox etc. Corp.* v. *City of Bakersfield* (1950) 36 Cal.2d 136 [222 P.2d 879] as authority for such statement. But the rule there stated is (p. 139): "It follows, therefore, that *short of being confiscatory or prohibitory,* there is no rule of law that requires that a tax be reasonable in amount . . . ." (Italics supplied.)

within their boundaries. With repeal, California chose not to reinstate this local option and control was put under state regulation. From this, appellant argues the state's power is exclusive.

We agree that the Constitution gives the state exclusive authority to license and regulate, but the question is, of course, does the ordinance do either. Resolution of this problem is made unnecessary by results reached in our consideration of the next point.

## II. *Does the Ordinance Represent a Valid Exercise of the Powers of a Charter City Over Its Municipal Affairs?*

■ Where the city involved is, as here, a freeholders' charter city availing itself of the "home rule" provisions of article XI, sections 6 and 8 of the California Constitution (*City of Los Angeles* v. *Layton* (1969) 269 Cal. App.2d 567, 568 [75 Cal.Rptr. 143]), it is settled that the only restrictions on the exercise of its power to tax are those limitations appearing in the Constitution and in the charter, itself. *City of Glendale* v. *Trondsen* (1957) 48 Cal.2d 93, 98 [308 P.2d 1].

Article XI, section 8 of the state Constitution authorizing freeholders' charters states: "(j) . . . It shall be competent in any charter framed under the authority of this section to provide that the municipality governed thereunder may make and enforce all laws and regulations in respect to *municipal affairs,* subject only to the restrictions and limitations provided in their several charters and in respect to other matters they shall be subject to general laws." (Italics added.) Section 6 of the same article contains similar language.[3] The City of Los Angeles charter contains the authorized provisos.

■ The term "municipal affairs" has indistinct outlines and no precise, inflexible definition is available. As noted in *Pacific Tel. & Tel. Co.* v. *City & County of San Francisco* (1959) 51 Cal.2d 766, 771 [336 P.2d 514]: "It is likewise settled that the constitutional concept of municipal affairs is not a fixed or static quantity. It changes with the changing conditions upon which it is to operate. What may at one time have been a matter of local concern may at a later time become a matter of state concern controlled by the general laws of the state." (And see: 3 Witkin, Summary of Cal. Law (7th ed. 1960) 1974-1976, Constitutional Law § 164.)

Under the rule stated in *Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56 [81 Cal.Rptr. 465, 460 P.2d 137] the questions to resolve are: is there a

---

[3]We deal here with an ordinance admittedly intended for revenue purposes and not intended as an exercise of police powers under article XI, section 11, which states: "Any county, city, town, or township may make and enforce within its limits all such local, police, sanitary and other regulations as are not in conflict with general laws."

conflict involved? does the legislation disclose an intent to preempt the field? The Supreme Court said (pp. 61-63): "As to matters which are of statewide concern, however, home rule charter cities remain subject to and controlled by applicable general state laws regardless of the provisions of their charters, if it is the intent and purpose of such general laws to occupy the field to the exclusion of the municipal regulation (the preemption doctrine) . . . .

"As is made clear in the leading case of *Pipoly* v. *Benson, supra* [20 Cal.2d 366 (125 P.2d 482, 147 A.L.R. 515)] local governments (whether chartered or not) do not lack the power, nor are they forbidden by the Constitution, to legislate upon matters which are not of a local nature, nor is the Legislature forbidden to legislate with respect to the local municipal affairs of a home rule municipality. Instead, in the event of conflict between the regulations of state and of local governments, or if the state legislation discloses an intent to preempt the field to the exclusion of local regulation, the question becomes one of predominance or superiority as between general state laws on the one hand and the local regulations on the other. (See also e.g. *Galvan* v. *Superior Court* (1969) 70 Cal.2d 851, 856-866 [76 Cal.Rptr. 642, 452 P.2d 930]; *Abbott* v. *City of Los Angeles* (1960) 53 Cal.2d 674, 681-684 [3 Cal.Rptr. 158, 349 P.2d 974, 82 A.L.R.2d 385]; *Chavez* v. *Sargent* (1959) 52 Cal.2d 162, 176-177 [339 P.2d 801]; *Agnew* v. *City of Los Angeles* (1958) 51 Cal.2d 1, 5 [330 P.2d 385]; *Wilson* v. *Beville* (1957) 47 Cal.2d 852, 856-861 [306 P.2d 789]; *Eastlick* v. *City of Los Angeles* (1947) 29 Cal.2d 661, 665-666 [177 P.2d 558, 170 A.L.R. 225]; *Southern Cal. Roads Co.* v. *McGuire* (1934) 2 Cal.2d 115, 123 [39 P.2d 412].)

"If resolution of that question requires a determination as to whether the matter regulated is a state or a municipal affair, then, as declared in *Professional Fire Fighters, Inc.* v. *City of Los Angeles* (1963) 60 Cal.2d 276, 294 [32 Cal.Rptr. 830, 384 P.2d 158], 'Because the various sections of article XI fail to define municipal affairs, it becomes necessary for the courts to decide, under the facts of each case, whether the subject matter under discussion is of municipal or statewide concern.' . . .

"In exercising the judicial function of deciding whether a matter is a municipal affair or of statewide concern, the courts will of course give great weight to the purpose of the Legislature in enacting general laws which disclose an intent to preempt the field to the exclusion of local regulation (see *Ex parte Daniels* (1920) 183 Cal. 636, 639-640 [192 P. 442, 21 A.L.R. 1172]), and it may well occur that in some cases the factors which influenced the Legislature to adopt the general laws may likewise lead the courts to the conclusion that the matter is of statewide rather than merely local concern. However, the fact, standing alone, that the Legis-

lature has attempted to deal with a particular subject on a statewide basis is not determinative of the issue as between state and municipal affairs, nor does it impair the constitutional authority of a home rule city or county to enact and enforce its own regulations to the exclusion of general laws if the subject is held by the courts to be a municipal affair rather than of statewide concern; stated otherwise, the Legislature is empowered neither to determine what constitutes a municipal affair nor to change such an affair into a matter of statewide concern."

■ There is no doubt that taxation for revenue for municipal purposes ordinarily is a "municipal affair." *City of Glendale* v. *Trondsen, supra,* at p. 98; *City of Grass Valley* v. *Walkinshaw* (1949) 34 Cal.2d 595, 599 [212 P.2d 894]; *In re Braun* (1903) 141 Cal. 204 [74 P. 780]; *Brewer* v. *Feigenbaum* (1941) 47 Cal.App.2d 171, 174-175 [117 P.2d 737]. But, under the ruling in *Bishop,* this court must determine if the city's tax measure here falls within that classification.

In 1955 the Legislature added part 14 to the Revenue and Taxation Code, being sections 32001-32556, inclusive, entitled "Alcoholic Beverage Tax Law." To this, in 1959, was added section 32010 reading as follows: "The taxes imposed by this part are in lieu of all county, municipal, or district taxes on the sale of beer, wine or distilled spirits. This section does not prohibit the application of Part 1 (commencing with Section 6001), Part 1.5 (commencing with Section 7200) or Part 1.6 (commencing with Section 7251) of this division to the sale, storage, use or other consumption of beer, wine or distilled spirits." (The reference to part 1.6 was added in 1969.)

■ While the city ordinance here under review states that it taxes the "purchase" of alcoholic beverages, it undoubtedly imposes a tax on a "sale," as that term is defined in Revenue and Taxation Code section 32010, of "distilled spirits."[4] ■ Since Revenue and Taxation Code section 32010 states it is "in lieu" of all municipal taxes on the sale of distilled spirits, the Legislature obviously intended it to be in place of local sales taxes which are thereby intended to be forbidden. *Southern Pac. Co.* v. *Levee Dist. No. 1* (1916) 172 Cal. 345, 350-354 [156 P. 502]; *Carey* v. *Retirement Board* (1955) 131 Cal.App.2d 739, 745 [281 P.2d 25].

---

[4]The definition of "sale" given in the Alcoholic Beverage Tax Law is in Revenue and Taxation Code section 32003, which adopts and expands the meaning given to "sale" in Business and Professions Code section 23025 (which reads: " 'Sell' or 'sale' and 'to sell' includes any transaction whereby, for any consideration, title to alcoholic beverages is transferred from one person to another . . . .")

The ordinance adopts the definition of "alcoholic beverage" contained in Business and Professions Code section 23004, a part of the Alcoholic Beverage Control Act: " 'Alcoholic beverage' includes alcohol, spirits, liquor, wine, beer, and every liquid . . . . which contains one-half of 1 percent or more of alcohol by volume and which is fit for beverage purposes . . . ."

Respondents argue that the ordinance imposes only a "purchase," not a "sale," tax and, therefore, it does not conflict with Revenue and Taxation Code section 32010; further, that the code section fails to indicate a legislative intent to preempt any tax field other than that of "sales." We disagree for reasons already noted, and for the reasons expressed by our Supreme Court in *Ainsworth* v. *Bryant* (1949) 34 Cal.2d 465, 473-475 [211 P.2d 564], generically classifying a San Francisco "purchase and use" tax as a sales tax.

■ Respondents additionally point to the second paragraph of section 32010 of the Revenue and Taxation Code, as affording an escape hatch.[5] The trial court agreed with respondents' position for, in a full and thoughtful memorandum of law, it stated: "The addition of section 32010 evidently is limited to the wholesaler to retailer form of tax. The section clearly and precisely exempts sales and use taxes from its orbit."

We do not so conclude. Part 1 (commencing with § 6001 of the Rev. & Tax. Code) is the "Sales and Use Tax Law" and imposes a state sales tax (§ 6051) and a state use tax (§ 6201) on retail sellers and on persons storing, using or consuming tangible personal property. Part 1.5 is the "Bradley-Burns Uniform Local Sales and Use Tax Law" and provides a vehicle for uniform imposition by counties and cities of a sales tax of one percent upon retailers selling tangible personal property, and a one percent use tax upon the storage, use or other consumption of such property. (See: Rev. & Tax. Code, §§ 7202, 7203.)

The Los Angeles ordinance does not fall within any of the exceptions mentioned in the second paragraph of Revenue and Taxation Code section 32010. Thus, the taxes imposed by part 1 are levied by the state not, as here, by a chartered city. Part 1.5 allows a maximum 1 percent rate for sales and use taxes, whereas the ordinance adopted by the city imposes a 5 percent tax, thus failing to qualify under this exception. Part 1.6 of the Revenue and Taxation Code (§§ 7251-7273, inclusive) is known as the "Transaction and Use Tax Law," and was added in 1969 for the express purpose of benefiting certain rapid transit districts, none of which is here involved.

Respondents seize upon a phrase in section 32010 reading: "The taxes imposed *by this part* are in lieu of . . . ." (italics added), pointing out that the only taxes imposed by "this part," *i.e.,* part 14 of the code, are contained in section 32151 (imposing a tax on beer and wine sold by a manufacturer, wine grower or importer and certain sellers of beer or wine—none being

---

[5]This paragraph reads: "This section does not prohibit the application of Part 1 . . ., Part 1.5 . . . or Part 1.6 . . . of this division to the sale, storage, use or other consumption of beer, wine or distilled spirits."

here pertinent) and in section 32201 (imposing a tax on sales of distilled spirits by similarly described persons). From these sections and their historical backgrounds, respondents argue (and the trial court agreed) that Revenue and Taxation Code section 32010 fails to indicate any state intention to appropriate the field of alcoholic beverage taxation. In so arguing, respondents ignore the other language of the code section which states: "The taxes imposed by this part *are in lieu of all* . . . municipal . . . taxes . . . ." (Italics added.) If the Legislature had meant in lieu of "some" such taxes, it easily could have said so.

We thus find that Revenue and Taxation Code section 32010 and Los Angeles city ordinance 136,900 are in irreconcilable conflict, further concluding that section 32010 clearly indicates the Legislature's intention to preempt the field of taxation on transactions in alcoholic beverages.

■ A second, and broader aspect of appellant's argument must now be discussed. This relates to the right of local authority to impose any taxes upon the sale and use of tangible personal property. Legislative intent to preempt this entire field was declared on August 13, 1968, when it enacted chapter 1265, Statutes 1968, as an urgency measure. The statute is in three sections. The first adds section 7203.5 to part 1.5 of the Revenue and Taxation Code (Bradley-Burns Uniform Local Sales and Use Tax Law). The second section concludes by saying: "Therefore, the Legislature declares that the state, by enactment of the Sales and Use Tax Law and the Bradley-Burns Uniform Local Sales and Use Tax Law, has preempted this area of taxation." The full text of this section, containing the Legislature's reasons for the enactment, appears in the footnote,[6] as does the urgency clause, section 3.

---

[6]Chapter 1265, "SEC. 2. The Legislature finds that the overlapping tax structures of the federal, state and local governments are seriously hampering the functioning of the State of California. Due to the high rate of the federal income tax, the state is precluded from making the personal income tax and bank and corporation taxes its chief sources of revenue, as high state taxes, when combined with the high federal tax, would make the income and franchise taxes prohibitive in this state. Moreover, the state in the past has allowed local government to make the property tax its chief source of revenue and for the state again to rely on this source of revenue would cause great consternation among property owners.

"Therefore, the state must rely on sales and use taxes as its chief source of revenue.

"In addition, the Legislature is well aware that prior to the enactment of the Bradley-Burns Uniform Local Sales and Use Tax Law in 1955 the differences in the amount of sales tax levied among the various communities of the state created a very difficult situation not only for retailers but also created fiscal problems for the cities and counties. The retailer was faced with many situations which complicated tax collection, reporting, auditing and accounting. Because of the differences in taxes between areas, the retailer was affected competitively. Many areas advertised 'no city sales tax if you buy in this area.' This factor distorted what would otherwise have been logical economic advantages or disadvantages. It is apparent that enact-

██ Under the rule of *Bishop,* the Legislature's intention is not conclusive and it cannot, merely by so declaring, transform a "municipal affair" into an affair of statewide concern. We therefore must look to determine the "predominance or superiority as between general state laws on the one hand and the local regulations on the other." (*Bishop* v. *City of San Jose, supra,* at p. 62.) Certainly, the reasons given by the Legislature for preempting the entire area of sales and use taxation are persuasive and must be granted fullest consideration. These include the state's reliance upon sales and use taxes as its chief source of revenue; the difficulty faced by a retailer in the event municipal communities were permitted to tax, at different rates, sales and use of alcoholic beverages; and, third, the matter of competition with retailers in adjacent municipalities.

We emphasize that in determining whether state or local law is to be predominate, we deal only with the ordinance before us relating exclusively, as it does, to the purchase and on-premises consumption of alcoholic beverages.[7] In considering the problem, we have borne in mind the reasons for preemption of the entire field of sales and use taxation stated by the Legislature in chapter 1265, Statutes 1968, as well as the specific "in lieu"

---

ment of the Bradley-Burns Law has brought about reduced costs to the retailer and has corrected illogical competitive situations.

"Moreover, the Legislature finds that recent amendments to the state's Sales and Use Tax Law, which are incorporated into the ordinances of local government operating under the Bradley-Burns Law, have complicated the administration of sales and use taxes in such areas as prepayments and the taxing of certain occasional sales and leases. The increasing complexity of these taxes has made it more and more apparent that a return to the conflicting systems in existence prior to the adoption of the Bradley-Burns Law would be disastrous in California today.

"In the big metropolitan areas where most taxable sales occur, local officials have shown the most interest in returning to the older system of independent sales and use tax administration. And it is in these areas that most of the poor and the minority groups are concentrated, and it is these persons who are least able to pay increased consumer taxes. In addition, the recent trend of businesses to locate outside of metropolitan areas can only be accelerated by a system which grants them a competitive advantage by locating in the suburbs. And the fact should not be overlooked that varying and conflicting sales tax rates will have an adverse effect on the general business climate in California.

"Therefore, the Legislature declares that the state, by enactment of the Sales and Use Tax Law and the Bradley-Burns Uniform Local Sales and Use Tax Law, has preempted this area of taxation.

"Sec. 3. This act is an urgency statute necessary for the immediate preservation of the public peace, health or safety within the meaning of Article IV of the Constitution, and shall go into immediate effect. The facts constituting such necessity are:

"It has come to the attention of the Legislature that one or more cities in the State of California have enacted, or are considering enacting, sales and use tax ordinances which would impose taxes at rates in excess of the 1-percent rate provided by the Bradley-Burns Uniform Local Sales and Use Tax Law. It is essential that statewide uniformity in sales and use taxes imposed by local taxing jurisdictions be preserved."

[7](Compare: Gov. Code, § 37101; *City of Commerce* v. *State Board of Equalization* (1962) 205 Cal.App.2d 387, 390-391 [23 Cal.Rptr. 143].)

language of Revenue and Taxation Code section 32010. We must also recall the past and present significance of alcoholic beverages as a source of societal and other problems.

Taxation and regulation of alcoholic beverages are intertwined. Thus, it is necessary that the level of taxation be high enough so that this business pays its fair share of the cost of government, yet not so high as to result in illegal trafficking in liquor and its concomitant tax evasion. Few persons would desire the return of prohibition and the bootlegger. Viewed in that context, we have no purely municipal affair to consider, but a matter of statewide significance. We conclude that the state has reasonably and rightfully preempted the field of alcoholic beverage taxation and that Los Angeles City Ordinance 136,900 is invalid.

The judgment is reversed; the trial court is directed to enter judgment for the plaintiff.

Files, P. J., and Kingsley, J., concurred.

A petition for a rehearing was denied June 1, 1970, and respondents' petition for a hearing by the Supreme Court was denied July 8, 1970.