[Civ. No. 45635. Second Dist., Div. Five. Sept. 17, 1976.]

MARSH & McLENNAN OF CALIFORNIA, INC.,
Plaintiff, Cross-defendant and Appellant, v.
CITY OF LOS ANGELES et al.,
Defendants, Cross-complainants and Respondents.

**110**

COUNSEL

Long & Levit, Walter S. Weiss and Richard B. Wolf for Plaintiff, Cross-defendant and Appellant.

Burt Pines, City Attorney, Thomas C. Bonaventura, Senior Assistant City Attorney, and Richard A. Dawson, Assistant City Attorney, for Defendants, Cross-complainants and Respondents.

OPINION

**STEPHENS, Acting P. J.**—Plaintiff appeals from a judgment denying it a refund of business taxes paid to defendant city and from the judgment for defendant city on its cross-complaint to recover taxes for the ensuing years.

*Facts*

Appellant Marsh & McLennan of California, Inc. filed this action on March 3, 1972, seeking (1) a refund of business taxes paid to respondent City of Los Angeles for the years 1965 through 1969, and (2) a judicial declaration that the commission revenue received by appellant in its capacity as an insurance broker is exempt from such taxation. By cross-complaint respondent city sought to recover the amount due for unpaid tax assessments. The trial court ruled that Los Angeles Municipal Code sections 21.03 and 21.190 (which together impose the tax) are valid, enforceable, and constitutional exercises of the taxing power of the city. The trial court further declared that where appellant is not an insurance agent for each insurer in the association, the city may validly include gross receipts which appellant receives from associations of insurers as gross receipts received in its capacity as insurance broker. The court rendered judgment against appellant in the sum of $28,735.14 for unpaid tax assessments.

Los Angeles Municipal Code section 21.03[1] requires that a business tax registration certificate must be obtained and a business tax paid by every person who engages in any of the businesses or occupations enumerated in subsequent sections. Section 21.03 also provides that the tax is imposed pursuant to the taxing power of the city solely for the purpose of obtaining revenue. Section 21.190 sets forth the rate of tax on independent contractors who are not specifically taxed by other provisions of the article. That section also provides an exemption for receipts which the city is prohibited from taxing under the Constitution or laws of the State of California. Section 21.190[2] provides, inter alia:

---

[1] "SEC. 21.03. IMPOSITION OF TAX:

"(a) Subject to the provisions of this Article, a business tax registration certificate must be obtained and a business tax must be paid by every person engaged in any of the businesses or occupations specified in Sections 21.50 to 21.198, inclusive, of this Article; and a business tax is hereby imposed in the amount prescribed in the applicable section. No person shall engage in any business or occupation subject to tax under the provisions of this Article without obtaining a registration certificate and paying the tax required thereunder.

"(b) The business tax registration certificate required to be obtained and the tax required to be paid are hereby declared to be required pursuant to the taxing power of the City of Los Angeles solely for the purpose of obtaining revenue. Compliance with such requirements shall not be construed to be a condition precedent to engaging in any business or occupation within the City of Los Angeles where the imposition of such a condition precedent would be contrary to law."

[2] Section 21.190 was amended subsequent to appellant's filing its suit; the section's present format is set forth above and is virtually unchanged.

"(a) . . . For every person engaged in any trade, calling, occupation, vocation, profession or other means of livelihood, as an independent contractor and not as an employee of another, and not specifically taxed by other provisions of this Article, the tax shall be $30.00 per year or fractional part thereof for the $6,000.00 or less of gross receipts . . . ."

"(c) As used in this section, the term 'gross receipts' does not include:

"1. Receipts from a trade, calling, occupation, vocation, profession or other means of livelihood, which this city is prohibited from taxing under the Constitution or laws of the State of California; . . . "

Section 21.190(c)6[3] provides that the tax of gross receipts of persons acting as agents or brokers includes only receipts received as commissions, fees earned, or charges made for the performance of any service as agent or broker.

Appellant is engaged in business within the City of Los Angeles as an insurance agent, insurance broker, and surplus line broker, duly licensed to act in such capacities under the California Insurance Code. Respondent city has taxed the commission income of appellant which it received in its capacity as insurance broker,, but has considered exempt from such taxation that commission income received by appellant in its capacity as insurance agent; insurance agents having been held exempt from municipal business taxes in *Hughes* v. *Los Angeles* (1914) 168 Cal. 764 [145 P. 94].

On February 25, 1970, appellant filed a claim with the city for a refund of taxes paid by appellant for February 1965 through February 1969. Appellant's claim was referred to the tax and permit division of the office of the city clerk. In June 1970, the city audited appellant's books and records for the purpose of determining the validity of the claim, and

---

[3]Section 21.190(c)6 provides in part as follows:
"Receipts of persons acting as agents or brokers, other than receipts received as commissions or fees earned, or charges of any character made or compensation of any character received for the performance of any service as agent or broker; provided that any agent or broker dealing in stocks or other similar written instruments evidencing a right to participate in the assets of any business, or dealing in bonds or other evidences of indebtedness, who also deals in such property as a principal, shall include in the gross receipts by which the tax is measured the amount of his trading profits resulting from such dealings. No deduction from receipts attributable to trading as a principal shall be made unless such deduction is provided for under subsection (a) of Section 21.00 of this Article. . . ."

issued a notice of tax due on September 3, 1970. An informal hearing was held November 25, 1970, at which time the June 1970 audit was discussed. In August 1971, the city performed a revised audit, during which the city clerk examined general ledgers, business records, and lists of insurance companies with which appellant had agency agreements.[4] Where there was no notice of agency appointment on file, commissions which were derived from placing business with insurers were considered taxable broker income. The revised audit generated a second notice of tax due on September 15, 1971. The city levied an assessment against appellant for city business taxes on October 14, 1971. This assessment included receipts received by appellant in its capacity as an insurance broker and surplus line broker, but exempted receipts received by appellant in its capacity of insurance agent.

In a letter dated November 9, 1971, the city clerk granted appellant's request that a hearing upon the assessment be waived and stated that "accordingly, the administrative proceedings prescribed by Section 21.16 L.A.M.C. are deemed to have been exhausted." Appellant filed the instant action on March 3, 1972.[5]

## Discussion

Normally, an agent has the authority to bind the insurer and to execute insurance policies. A broker does not normally have authority to bind, and the insurer must first execute the binder or policy. This distinction was noted by Jay Lloyd, a vice-president of appellant corporation who testified that the general practice is for brokers not to bind or execute a policy without prior authorization from the insurer. Lloyd testified that the difference between an agency agreement and a brokerage agreement is that appellant can bind the insurer with whom it has an agency agreement by executing the policy, whereas in its brokerage capacity appellant has no authority to bind the insurer without prior approval.[6] Lloyd further stated that the prime advantage to

---

[4]Commissions derived from insurance business placed by appellant (1) with the insurers which had filed a notice of agency appointment of appellant with the California Insurance Commissioner, or (2) with an association of insurers which had filed such notice, were considered exempt. Under California Insurance Code section 704, a notice of agency appointment is required to be filed by an insurer to establish an agency relationship between the insurer and an agent.

[5]Certain facts pertaining to the issue of the statute of limitations raised by respondent are excluded since our decision in this case makes it unnecessary to reach that issue.

[6]Lloyd testified that there was one company ("Appalachian") with which appellant, acting as a broker, and by custom, accepts a verbal agreement without an actual

appellant in having an agency agreement with the insurer is that it facilitates the issuance of the policy or binder. In an agency situation, appellant will negotiate with the underwriter, get his authorization for maximum line, be able to execute the binder, and execute the binder in its office. If a brokerage insurer is involved, the insurer would be required to execute the binder or policy. Lloyd said that there is thus an operational advantage to appellant in having an agency agreement, and that the advantage to the insurer is that it is relieved of issuance of binders and policies. Some insurers issue policies only through agents, while others do not sign an agency agreement with brokers because they do not desire to give the broker the authority to bind them to a risk which they may not desire.

From the sample agency and broker agreements submitted as exhibits, it is apparent that under the agency agreement the insurer grants authority to the agent to receive and accept proposals for insurance and to issue contracts of insurance on policy forms provided by the insurer. The broker agreement recites only that the insurer will "consider business" offered to it by the broker.

Appellant does not pay the gross premium tax imposed upon insurers by section 28, article XIII of the California Constitution and by California Revenue and Taxation Code section 12201. Appellant does pay the tax imposed upon surplus line brokers by California Insurance Code section 1775.5, and also pays the tax imposed by the California Bank and Tax Law (Rev. & Tax. Code, § 23151).

■ Appellant asserts that the city should be prohibited from taxing commissions received by appellant in its capacity as an insurance broker by virtue of California Constitution article XIII, section 28(f). That article provides for a state levy on insurance companies' gross premiums, which tax is in lieu of all other taxes upon insurers.[7] California Revenue and Taxation Code section 12204 implements the same provision with identical language.

While neither agents nor brokers are "insurers" within the definition of the article, article XIII, section 28(f) has been held to exempt an

signature by the insurer to confirm binding authority, but that this custom was contrary to any other brokerage practice of which he was aware.

[7]Section 28(f): "The tax imposed on insurers by this section is in lieu of all other taxes and licenses, state, county, and municipal, upon such insurers and their property. . . ."

insurance agent's commission income from municipal occupation taxes. (*Hughes* v. *Los Angeles, supra,* 168 Cal. 764; see also *Groves* v. *City of Los Angeles,* 40 Cal.2d 751 [256 P.2d 309].) Appellant contends that the commission received in its capacity as insurance broker should likewise be exempt because the functions performed by an insurance broker are identical to those functions performed by an insurance agent, whether or not there is on file a notice of agency appointment with the insurance commissioner. Appellant further contends that the city ordinance violates the equal protection clause of the Fourteenth Amendment of the federal Constitution and article I, sections 11 and 21 of the California Constitution by imposing a tax on insurance brokers and not insurance agents; and that the tax is an invalid exercise of the power of a charter city over municipal affairs because the ordinance conflicts with the regulation and taxation of the insurance industry which, appellant asserts, is preempted by the state.

### *Issues*

Three issues are presented on this appeal: (1) whether the functions performed by an insurance broker are identical to those functions performed by an insurance agent so that the exemption from the municipal tax should apply to both groups; (2) whether the separate classification of insurance brokers and agents for taxation purposes is unreasonable and discriminatory; and (3) whether the state has preempted the field of taxation of the insurance industry.

### *Municipal Taxation of Insurance Brokers*

The sole criterion relied upon by the city in exempting insurance agents while taxing brokers is whether or not there is a notice of agency appointment on file with the Insurance Commissioner. Appellant provides extensive evidence of the uniformity of monetary functions performed by brokers and agents and concludes that there is no genuine distinction between appellant's role as agent and broker.

While a notice of agency appointment is the criterion required by Insurance Code section 1704 to establish an agency relationship between an insurer and its agent, appellant's attempt to state the notice of appointment as the sole distinguishing feature between agents and brokers camouflages and ignores the more basic legal distinctions between the two.

Appellant's real contention is that insurance brokers should share the same exemption as agents due to the similarity of their monetary functions. Appellant correctly states that the "in lieu" provision found in California Constitution article XIII, section 28(f) exempts *insurers* from all taxes and licenses, state or local, other than the gross premiums tax on insurers levied in that article. Article XIII, section 28(a) defines who is an insurer, to whom the "in lieu" provision applies. It is apparent that neither brokers nor agents qualify as "insurers" under this definition.[8]

*Hughes* v. *Los Angeles,* 168 Cal. 764 [145 P. 94] decided that the imposition of a municipal occupation tax upon the *agents* of insurers violated the California Constitution article XIII, section 14(6). Article XIII, section 14 was the predecessor of article XIII, section 28 and contained substantially the same provision for a state tax on the gross premiums of insurance companies which was "in lieu of all other taxes and licenses, state, county, and municipal, upon the property of such companies . . . ." A Los Angeles revenue ordinance imposed a tax of $10 per quarter on every person or corporation carrying on the business of local or general insurance agent, solicitor, or broker. In holding insurance agents exempt from the taxation ordinance, the court's stated rationale was that "every insurance corporation must act through agents and can act only through agents, and that, therefore, in a direct and immediate sense a tax upon such agents for the right to do business is a tax upon the corporation's right to do business." (At p. 765.) (Actually, all corporations must act through agents of one form or another.) It is worth noting that while the ordinance taxed both insurance agents *and* brokers, the court held "that the imposition of this occupation tax upon the *agents* of insurance corporations . . . may not be enforced." (At p. 766; italics added.) No distinction was made as to whether the tax could be imposed upon insurance brokers, who were also mentioned in the ordinance. The conspicuous absence of an express exemption for brokers intimates that, under *Hughes,* brokers share no such exemption.

In *Groves* v. *City of Los Angeles,* 40 Cal.2d 751 [256 P.2d 309], the Supreme Court held that bail bondsmen were agents of the insurer and thus exempt from the municipal bail agent's license tax. The question before the court was whether bail bondsmen were agents of the insurer

---

[8]Article XIII, section 28(a) states: " 'Insurer,' as used in this section, includes insurance companies or associations and reciprocal or interinsurance exchanges together with their corporate or other attorneys in fact considered as a single unit, and the State Compensation Insurance Fund."

or independent contractors; if found to be agents, the exemption would apply, whereas if found to be independent contractors, no exemption would attach. The court declared bail bondsmen were agents of the insurer in that under Insurance Code section 1800 an insurer cannot conduct a bail bond business except by and through a licensed bail agent; hence, the bail-license tax was declared invalid. The court stated that the insurer "may act only through agents and plaintiff is its agent." (At p. 760.) Had the court found bail bondsmen to be independent contractors, the "in lieu" exemption would not have applied.

Our view is that appellant, in its capacity of insurance broker, is an independent contractor, not an agent of the insurer, and therefore, does not share the exemption of insurance agents.

At the outset, we have the statutory provision that " 'insurance agent' means a person authorized, by or on behalf of an insurer, to transact insurance" (Ins. Code, § 31), while " 'insurance broker' means a person who, for compensation and on behalf of another person, transacts insurance other than life *with, but not on behalf of, an insurer.*" (Ins. Code, § 33; italics added.) In *Groves, supra* (at p. 758), the Supreme Court referred to an insurance broker as an independent contractor: "They [defendant City of Los Angeles] reason that therefore the bail agent is an independent contractor like an insurance broker." An independent insurance broker is not an agent of the insurer, but rather is an agent of the insured. (Ins. Code, § 33; *Solomon* v. *Federal Ins. Co.,* 176 Cal. 133, 138 [167 P. 859]; *Parrish* v. *Rosebud M. & M. Co.,* 140 Cal. 635 [74 P. 312]; *Detroit T. Company* v. *Transcontinental Ins. Co.,* 105 Cal.App. 395 [287 P. 535]; 16 Appleman, Insurance Law and Practice, § 8730.)

In *Maloney* v. *Rhode Island Ins. Co.,* 115 Cal.App.2d 238, 244 [251 P.2d 1027], the court stated that an insurance broker is generally an agent of the insured and not of the insurer. A broker may become an agent for the insurer but only for the purpose of delivering policies and collecting premiums thereon; the agency relationship between broker and insurer terminates upon transmittal of the premium to the insurer.

The most definitive characteristic of an insurance agent is his authority to bind his principal, the insurer; an insurance broker has no such authority. Mr. Lloyd testified that the broker does not have authority to bind an insurer and that the insurance company must first execute the

binder or policy; a broker does not execute a policy without a prior authorization from the insurer. In contrast, the agent is authorized to execute the binder himself.

In *Osborn* v. *Ozlin,* 310 U.S. 53, 60-61 [84 L.Ed. 1074, 1077, 60 S.Ct. 758], the United States Supreme Court recognized the distinction between insurance agents and brokers, stating:

"The 'production' of insurance—'production' being insurance jargon for obtaining business—is, in the main, carried on by two groups, agents and brokers. Though both are paid by commission, the different ways in which the two groups perform their functions have important practical consequences in the conduct of the insurance business, and hence in its regulation. The agent is tied to his company. But his ability to 'produce' business depends upon the confidence of the community in him. He must therefore cultivate the good will and sense of dependence of his clients . . . The broker, on the other hand, is an independent middleman, not tied to a particular company. He meets more specially the needs of large customers, using their concentrated bargaining power to obtain the most favorable terms from competing companies."

While we note many similarities in the services performed and the monetary functions of agents and brokers, there is a more fundamental legal distinction between insurance agents and brokers. Put quite simply, insurance brokers, with no binding authority, are not agents of insurance companies, but are rather independent contractors, to whom the "in lieu" provision has no application.

Further distinctions between the two groups do exist. The notice of agency appointment filed by the insurance company on behalf of its agent is limited as to the types or classes of insurance; there are no restrictions on the class of insurance a broker can present to the insurer. Sections 1648, 1662, and 1665 of the Insurance Code set forth the requirements for eligibility for a licensee to act as an insurance broker and the necessity of filing a bond; sections 1704 and 1705 set forth different requirements for an applicant for a license to act as an insurance agent. The applicant must have filed on his behalf a notice of agency appointment executed by the insurer, which appoints the applicant, upon licensing, as its agent within the state. Insurance Code sections 31, 33, 1621 and 1623 make it clear that an insurance agent and insurance broker are different capacities.

The *Hughes* case, *supra,* relies on the theory that an insurance company can act only through an agent, and that a tax upon agents was "in a direct and immediate sense" a tax upon the corporation's right to do business, but it is the insurance company that has the freedom of choosing whom it desires to appoint as agents, thereby possessing control over its "right to do business."

*Edward Brown & Sons* v. *McColgan,* 53 Cal.App.2d 504 [128 P.2d 186] held that despite the "in lieu" provision of the California Constitution, even insurance agents must pay the state corporation franchise tax, which is measured by the net income of the corporate insurance agency. The corporate franchise tax is exacted for the privilege of doing business in a corporate capacity (*The Pacific Co., Ltd.* v. *Johnson,* 212 Cal. 148, 154 [298 P. 489]; affd. in 285 U.S. 480 [76 L.Ed. 893, 52 S.Ct. 424]; see also *Consolidated Title Sec. Co.* v. *Hopkins,* 1 Cal.2d 414, 419 [35 P.2d 320]) and is not inconsistent with *Hughes* v. *Los Angeles, supra.*[9] The court in *Edward Brown & Sons* upheld the franchise tax and found *Hughes* not controlling:

"The Hughes case decided that an occupation tax aimed at insurance agents hit insurance companies directly. This holding was necessary because the 'in lieu' provision applies to direct taxes on insurance companies, and does not apply to indirect taxes imposed on other persons or corporations and passed on to the insurance company. . . . It follows that unless the franchise tax on Edward Brown & Sons is a direct tax on the insurance companies it represents, appellant must pay the franchise tax.

"It is apparent that any effect that the payment of a franchise tax by Edward Brown & Sons may have on the insurance companies it represents is at most indirect." (53 Cal.App.2d at pp. 507-508.)

We approve the rationale of the *Edward Brown* case—which applies even to insurance agents—and feel that the municipal occupation tax cannot be considered a direct tax on insurers, and at most is indirect. Further, this case noted that insurance agents pay no gross premium tax, and that the franchise tax act does not single out the business of insurance agents and levy a tax on that business, but rather is imposed on

---

[9]The majority in *Groves* v. *City of Los Angeles, supra,* 40 Cal.2d 751 stated that *Edward Brown & Sons* cast doubt upon the *Hughes* rationale; the dissent stated *Hughes* should be overruled. However, the collateral validity of *Hughes* is not before this court.

the privilege of using the corporate mechanism with its consequent advantage over other forms of doing business in this state. Similarly, in the instant case, brokers pay no gross premium tax; the municipal occupation tax does not single out the insurance business but is rather a tax on all independent contractors in any business in the city; and appellant enjoys attendant advantages of dealing as an independent insurance broker.[10]

*The Equal Protection Issue:*

■ We next consider whether the classification of insurance brokers and agents for taxation purposes violates the equal protection clauses of the California or federal Constitutions. The equal protection clause applies to tax measures. (*Wheeling Steel Corp. v. Glander,* 337 U.S. 562, 570-572 [93 L.Ed. 1544, 1550-1551, 69 S.Ct. 1291].)

It must be noted that the ordinance taxes *all* independent contractors generally; its language is not directed solely to insurance brokers or any type of business in particular. Thus the ordinance itself imposes no discriminatory classification of insurance agents or brokers. Rather, the courts in *Hughes* and *Groves, supra,* have ruled insurance agents share the constitutional exemption from municipal taxes given to insurance companies. The root of the agent's exemption lies not in the city's ordinance, but in the California Constitution's "in lieu" provision and the judicially declared exemption of insurance agents from local taxation.

In *City of San Jose* v. *Donohue,* 51 Cal.App.3d 40 [123 Cal.Rptr. 804], defendant contended that a municipal tax ordinance on utility users denied him equal protection of the law because insurance companies and banks, though also utility users, were exempt. The court upheld the validity of the ordinance, stating: "Insofar as defendant questions the existence of a rational basis for exempting insurance companies and banks from the application of the utility tax ordinance, it suffices to point out that article XIII, section 14 4/5 and former section 16 of the California Constitution, expressly prohibit the imposition of any such tax upon insurance companies and banks. A constitutional mandate provides a rational basis for tax exemption." (At p. 46.)

[10](See *Stredelman* v. *City of Cincinnati* (1931) 38 Ohio App. 539 [176 N.E. 580], affd. 123 Ohio St. 542 [176 N.E. 215], holding that an insurance broker was subject to a municipal occupation tax because he was an independent contractor and not an agent; the court rejected plaintiff's preemption and equal protection arguments.)

We have already demonstrated that insurance brokers are independent contractors, while insurance agents, being representatives of their insurer, share the exemption given the insurance company. We noted substantial differences in the Insurance Code between insurance agents and brokers. Persons in the same general type of business may be differently classed where their methods of operation are not identical. (*Willingham Bus Lines, Inc.* v. *Municipal Court,* 66 Cal.2d 893 [59 Cal.Rptr. 618, 428 P.2d 602]; *Fox, etc. Corp.* v. *City of Bakersfield,* 36 Cal.2d 136 [222 P.2d 879]; *Associated Home Builders, etc., Inc.* v. *City of Newark,* 18 Cal.App.3d 107 [95 Cal.Rptr. 648]; *Web Service Company* v. *Spencer,* 252 Cal.App.2d 827 [61 Cal.Rptr. 493].)

In *Willingham, supra,* a charter bus line argued that a city business license tax based on apportioned gross receipts was invalid on the ground that other businesses, including other vehicles for hire such as taxis, were taxed on various other bases. The court upheld the tax, finding a valid distinction for the purpose of taxation.

In *Fox, supra,* a municipal business license tax on theatres and certain amusement businesses was held to be based on a proper classification, although other named amusement businesses were exempted from the tax. The tax was imposed on those businesses charging admission and dealing with larger groups of people. The court stated: "No constitutional rights are violated if the burden of the license tax falls equally upon all members of a class, though other classes have lighter burdens or are wholly exempt, provided that the classification is reasonable, based on substantial differences between the pursuits separately grouped, and is not arbitrary. [Citations.]" (36 Cal.2d at p. 142.)

In *Alco Plating Corp.* v. *City of Los Angeles,* 39 Cal.App.3d 948 [114 Cal.Rptr. 506], the court held that there was a reasonable basis for classifying a taxpayer's business which was primarily engaged in supplying a service as distinguished from businesses primarily engaged in manufacturing and selling property. It has been held that differences in conducting businesses in the same general category are sufficient to sustain different classifications for the purpose of taxation. (*City of Los Angeles* v. *Crawshaw Mortgage & Inv. Co.,* 51 Cal.App.3d 696 [124 Cal.Rptr. 363].)

In view of the essential differences between insurance brokers and agents, and based upon the fundamental legal distinction in their

respective status as independent contractor and agent, classification for taxation purposes of the two groups is reasonable and not an invidious discrimination. We hold that the challenged application of the city occupation tax to appellant in its capacity of insurance broker does not constitute a deprivation of equal protection of the law.

*The Issue of Preemption by the State:*

██ We turn to appellant's final contention: that regulation and taxation of the insurance industry is preempted by the state and that, hence, the ordinance is invalid.

██ As to matters which are of statewide concern, home rule charter cities remain subject to and controlled by applicable general state laws regardless of the provisions of their charters, if it is the intent and purpose of such general laws to occupy the field to the exclusion of municipal regulation (the preemption doctrine). (*Bishop* v. *City of San Jose,* 1 Cal.3d 56, 61-62 [81 Cal.Rptr. 465, 460 P.2d 137]; *Pac. Tel. & Tel. Co.* v. *City & County of S. F.,* 51 Cal.2d 766, 768-769 [336 P.2d 514]; *Pipoly* v. *Benson,* 20 Cal.2d 366, 369-370 [125 P.2d 482, 147 A.L.R. 515].)

Charter cities, however, have complete control over municipal affairs, and have direct constitutional power to impose license taxes for revenue raising purposes. (Cal. Const., art. XI, § 5(a); *City of Grass Valley* v. *Walkinshaw,* 34 Cal.2d 595, 598 [212 P.2d 894].) ██ The municipal ordinance in question is expressly for revenue raising purposes only. (Los Angeles Mun. Code, § 21.03(b).)

Absent an intent by the state to occupy a field, a strong policy of home rule fiscal autonomy is controlling. (*City of Glendale* v. *Trondsen,* 48 Cal.2d 93 [308 P.2d 1].) It is difficult to conceive that the field of taxation of the insurance industry has been preempted by the state when, despite the "in lieu" provision, both agents and brokers are subject to the corporate franchise tax under *Edward Brown & Sons* v. *McColgan, supra,* and when surplus-line brokers are subject to additional taxation.

In *Rivera* v. *City of Fresno,* 6 Cal.3d 132 [98 Cal.Rptr. 281, 490 P.2d 793], the Supreme Court upheld a municipal utility users' tax against the contention that the state Legislature had enacted a uniform statewide system of sales and use taxation and that it had declared an intention to preempt the field. The court added that "whether or not the state has

occupied the field of regulation, cities may levy fees or taxes solely for revenue purposes, as was done by the Fresno utility users' tax. [Citations.]" (*Id.,* at p. 139.) Similarly, while the state occupies the field of regulating insurance agents and brokers, respondent may levy fees or taxes solely for revenue purposes. A particular matter may be a state affair and exclusively subject to state regulation, but yet not immune from local taxation where the tax does not interfere with the field preempted. (*Ainsworth* v. *Bryant,* 34 Cal.2d 465, 477 [211 P.2d 564].)

In *City of Los Angeles* v. *A.E.C. Los Angeles, Inc.,* 33 Cal.App.3d 933 [109 Cal.Rptr. 519], the court held that revenue measures of general application imposing a nondiscriminatory tax on persons doing business in a state regulated activity do not impinge on the sovereign power of the state. "The fatal flaw in Taxpayer's argument is its failure to recognize that the Los Angeles City business tax is a revenue and not a regulatory measure and that the imposition of a tax upon a contractor doing business with the state is a tax upon the contractor and not the state although the tax may be measured by gross receipts of the contractor obtained from the state." (*Id.* at p. 939.)

Appellant strongly relies on the case of *Century Plaza Hotel Co.* v. *City of Los Angeles,* 7 Cal.App.3d 616 [87 Cal.Rptr. 166] in support of its preemption argument. The state liquor tax involved there was similarly "in lieu" of all county, municipal, or district taxes. A local "tippler's tax" imposed by municipal ordinance on the purchase price of alcoholic beverages was invalidated due to the preemption of the field of taxation of the liquor industry. The intent of the Legislature to occupy the field of the sale of alcoholic beverages was, unlike this case, expressly declared. Article XX, section 22 of the state Constitution provides in part: "The State of California . . . shall have the exclusive right and power to license and regulate the . . . sale [and] purchase . . . of alcoholic beverages within the State . . . . The Department of Alcoholic Beverage Control shall have the exclusive power . . . to collect license fees or occupation taxes on account thereof." No such express legislative intent is found in California Constitution article XIII, section 28 relating to insurers. The corporate franchise taxes and surplus-line broker taxes imposed on insurance agents and brokers is incongruous with a declared intent to preempt the field.

In *A.B.C. Distributing Co.* v. *City and County of San Francisco,* 15 Cal.3d 566, 575 [125 Cal.Rptr. 465, 542 P.2d 625], the Supreme Court

held that a San Francisco payroll expense tax was valid even as applied to the business of wholesale beer and liquor distribution, stating that "*Century Plaza* is distinguishable from the instant case, in that the Los Angeles 'tippler's tax' quite clearly singled out the liquor industry in imposing a tax upon the purchase (and, necessarily, the sale) of alcoholic beverages. In contrast . . . San Francisco's . . . tax is applicable to all businesses. . . ." In our case, the insurance industry is not singled out for taxation by the ordinance.

## Conclusion

We do not view this local ordinance—which taxes all independent contractors in the city—as a matter of statewide concern; nor does the city occupation tax conflict with state policies in the regulation and taxation of insurance companies. The municipal occupation tax ordinance in question is a valid exercise of the home rule revenue raising power and, based on the reasonable distinctions between insurance brokers and agents as we have elaborated, the tax is not discriminatory.

The judgment denying appellant a refund of the tax and ordering payment of unpaid tax assessments is affirmed. Each party is to bear its own costs on appeal.

Ashby, J., and Hastings, J., concurred.