TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | |
|---|---|
| OPINION | : |
| : | No. 90-928 |
| of : | |
| : | JUNE 12, 1991 |
| DANIEL E. LUNGREN : | |
| Attorney General : | |
| : | |
| RODNEY O. LILYQUIST : | |
| Deputy Attorney General : | |
| : | |

_____

THE STATE BOARD OF EQUALIZATION has requested an opinion on the following question:

Is the San Diego City "transient transportation tax" a sales or use tax or is it a substantially different tax for purposes of administering local sales and use tax ordinances?

CONCLUSION

The San Diego City "transient transportation tax" is a use tax for purposes of administering local sales and use tax ordinances.

ANALYSIS

Revenue and Taxation Code section 7203.5[1] provides:

"The State Board of Equalization shall not administer and shall terminate its contract to administer any sales or use tax ordinance of a city, county, redevelopment agency, or city and county, if such city, county, redevelopment agency, or city and county imposes a *sales or use tax* in addition to the sales and use taxes imposed under an ordinance conforming to the provisions of Sections 7202 and 7203.

_____

[1] All section references are to the Revenue and Taxation Code unless otherwise specified.

"The board shall give such city, county, redevelopment agency, or city and county written notice of termination, stating the reasons therefor .... If the cause for termination is not cured within the time specified in the notice, the board shall not administer the ordinance until the cause for termination is removed ....

"Nothing in this section shall be construed as prohibiting the levy or collection by a city, county, redevelopment agency, or city and county of *any other substantially different tax* authorized by the Constitution of California or by statute or by the charter of any chartered city." (Emphasis added.)

The City of San Diego imposes a use tax upon persons leasing automobiles from car rental agencies located within the city. (§ 7202, subd. (a)(8)(A) ["... a use tax of 1 percent or less ... upon the storage, use, or other consumption of tangible personal property ... in the city"], see also §§ 6006.3, 6009, 6010, 6010.1, 6201; Cal. Code of Regs., tit. 18, § 1660.) This 1 percent use tax is imposed upon total rental charges, collected by the rental agency at the same time as other rental charges, and becomes the obligation of the rental agency if not collected from the customer or transmitted to the Board. (See §§ 6011, 6201-6204.)

San Diego also imposes a "transient transportation tax" upon persons renting automobiles for a period of 30 or fewer days from car rental agencies located within the city. The tax rate is 3 percent of the total rental charges, and the tax is collected by the rental agency at the same time as the other rental charges. The tax becomes the obligation of the rental agency if not collected from the customer or transmitted to the city. It is deposited in the city's general fund for general governmental services.

The question presented for analysis is whether the "transient transportation tax" adopted by the City of San Diego is an additional "sales or use tax" or a "substantially different tax" as those terms are used in section 7203.5. If the former, the State Board of Equalization ("Board") must notify the city that the contract to administer the city's sales and use tax ordinances will be terminated unless the transient transportation tax ordinance is rescinded. We conclude that the city's transient transportation tax constitutes a use tax.

The Sales and Use Tax Law (§§ 6001-7176) imposes a state sales tax (§ 6051) on retail sellers and a state use tax (§ 6201) on persons storing, using, or consuming tangible personal property within the state. (See generally *Rivera v. City of Fresno* (1971) 6 Cal.3d 132, 137; *Century Plaza Hotel Co. v. City of Los Angeles*

(1971) 7 Cal.App.3d 616, 623.)  These taxes are administered by the Board.  (§ 7051.)

The Bradley-Burns Uniform Local Sales and Use Tax Law (§§ 7200-7212) provides a mechanism for the imposition of sales and use taxes by cities and counties in addition to the state taxes. (§§ 7202-7203.)  All local sales and use tax ordinances are administered by the Board.  (See §§ 7203.5-7204.3, 7209-7211.)  As explained in *Geiger v. Board of Supervisors* (1957) 48 Cal.2d 832, 837:

"The act contemplates an integrated, uniform system of city and county sales and use taxation.  The counties are given authority to impose sales and use taxes as a means of raising additional revenue, and the cities are furnished with a plan of state administration which will relieve them from operating collection systems of their own. The taxpayers will receive the benefit of a scheme which will free them from the burden of complying with differing regulations of state and local taxes, avoid the necessity of making payments and reports to several governmental bodies, and permit all auditing to be done by a single agency."

Returning to the provisions of section 7203.5, we find that it limits the amount of local sales and use taxes that may be imposed, but has no effect upon the authority of a city or county to impose a "substantially different tax."  The legislative purposes of section 7203.5 are to prevent "situations which complicated tax collection, reporting, auditing and accounting" for local businesses and "varying and conflicting sales tax rates [that] have an adverse effect on the general business climate in California."  (Stats. 1968, ch. 1265, § 2; see *Rivera v. City of Fresno, supra*, 6 Cal.3d 132, 136-138; *Century Plaza Hotel Co. v. City of Los Angeles, supra*, 7 Cal.App.3d 616, 624-625, fn. 6.)[2]

---

[2]The full text of the declared purposes is as follows:

"The Legislature finds that the overlapping tax structures of the federal, state and local governments are seriously hampering the functioning of the State of California.  Due to the high rate of the federal income tax, the state is precluded from making the personal income tax and bank and corporation taxes its chief sources of revenue, as high state taxes, when combined with the high federal tax, would make the income and franchise taxes prohibitive in this state. Moreover, the state in the past has allowed local government to make the property tax its chief source of revenue and for the state again to rely on this source of revenue would cause great consternation among property owners.

"Therefore, the state must rely on sales and use taxes as its chief source of revenue.

"In addition, the Legislature is well aware that prior to the enactment of the Bradley-Burns Uniform Local Sales and Use Tax Law in 1955 the differences in the amount of sales tax levied among the various communities of the state created a very difficult situation not only for retailers but also created fiscal problems for the cities and counties. The retailer was faced with many situations which complicated tax collection, reporting, auditing and accounting. Because of the differences in taxes between areas, the retailer was affected competitively. Many areas advertised `no city sales tax, if you buy in this area.' This factor distorted what would otherwise have been logical economic advantages or disadvantages. It is apparent that enactment of the Bradley-Burns Law has brought about reduced costs to the retailer and has corrected illogical competitive situations.

"Moreover, the Legislature finds that recent amendments to the state's Sales and Use Tax Law, which are incorporated into the ordinances of local government operating under the Bradley-Burns Law, have complicated the administration of sales and use taxes in such areas as prepayments and the taxing of certain occasional sales and leases. The increasing complexity of these taxes has made it more and more apparent that a return to the conflicting systems in existence prior to the adoption of the Bradley-Burns Law would be disastrous in California today.

"In the big metropolitan areas where most taxable sales occur, local officials have shown the most interest in returning to the older system of independent sales and use tax administration. And it is in these areas that most of the poor and the minority groups are concentrated, and it is these persons who are least able to pay increased consumer taxes. In addition, the recent trend of business to locate outside of metropolitan areas can only be accelerated by a system which grants them a competitive advantage by locating in the suburbs. And the fact should not be overlooked that varying and conflicting sales tax rates will have an adverse effect on the general business climate in California.

"Therefore, the Legislature declares that the state, by enactment of the Sales and Use Tax Law and the Bradley-Burns Uniform Local Sales and Use Tax Law, has

With this general background in mind, we examine the "transient transportation tax" ordinance adopted by the San Diego City Council. First, the label placed upon the tax is not controlling as to its basic character. In *Flynn v. San Francisco* (1941) 18 Cal.2d 210, 214-215, the Supreme Court observed:

"The character of a tax must be determined by its incidents, and from the natural and legal effect of the language employed in the act. [Citations.] The nomenclature is of minor importance, for the court will look beyond the mere title or the bare legislative assertion ... to see and determine the real object, purpose and result of the enactment. [Citations.]"

The San Diego transient transportation tax and the city's use tax have the same taxpayers (customers of the rental agencies), taxable events (rentals of the automobiles), measure of the taxes (total rental charges), collection mechanisms (rental agencies collect and transmit the taxes), and ultimate city expenditure of the funds (for general governmental purposes of the city).

It has been suggested, however, that certain differences between these city taxes compel the conclusion that the transient transportation tax is not an additional use tax. First, the city's transient transportation tax is limited to automobile leases of 30 or fewer days, while its use tax ordinance is not so limited. The transient transportation tax is imposed even though some of the rental use may occur outside the boundaries of the city, whereas the city's use tax only applies to rental use within the city's jurisdictional limits. (See § 7202, subd. (a)(8)(A).) Third, the transient transportation tax is imposed regardless of whether the rental agency has paid sales tax reimbursement on the vehicle; the city's use tax ordinance exempts vehicles for which sales tax reimbursement has been paid. (See § 6010, subd. (e)(10).)[3]

We disagree with the proposed suggestion. These minor differences do not transform the city's transient transportation tax into something other than a use tax. It remains a tax upon the use of tangible personal property. The differences do not change the "real object, purpose and result of the enactment." (*Flynn v. San Francisco, supra,* 18 Cal.2d 210, 218.)

preempted this area of taxation."

[3] We are informed by the Board that car rental agencies do not have an economic incentive to pay sales tax reimbursement at the time they purchase their vehicles. Accordingly, a state and local use tax is imposed upon their rental receipts in the ordinary course of business.

We find support for this conclusion in the cases that have examined the provisions of section 7203.5. In *Century Plaza Hotel Co. v. City of Los Angeles, supra,* 7 Cal.App.3d 616, the court ruled that a tax of 5 percent upon the purchase price of alcoholic beverages sold by a retailer for consumption on the premises where sold was not authorized under the terms of section 7203.5. The court concludes:

> "... the taxes imposed by [the Sales and Use Tax Law] are levied by the state not, as here, by a chartered city. [The Bradley-Burns Uniform Local Sales and Use Tax Law] allows a maximum 1 percent rate for sales and use taxes, whereas the ordinance adopted by the city imposes a 5 percent tax, thus failing to qualify ...." (*Id.*, at p. 623.)

Cases interpreting the phrase "substantially different tax" are equally supportive of the conclusion reached herein. (See *A.B.C. Distributing Co. v. City and County of San Francisco* (1975) 15 Cal.3d 566, 575 [payroll expense tax]; *Rivera v. City of Fresno, supra,* 6 Cal.3d 132, 138-140 [utility user tax].)

In summary, we find that the transient transportation tax in question is imposed upon the same use of tangible personal property as is currently subject to taxation under the Sales and Use Tax Law and the city's own sales and use tax ordinances. The city is limited to a 1 percent tax upon car rental charges (§ 7202, subd. (a)(8)(A)); it is not authorized to add an additional 3 percent. Section 7203.5 was designed to prevent such "increased consumer taxes." (Stats. 1968, ch. 1265, § 2.)

Consequently, the Board has the statutory duty to give the City of San Diego "written notice of termination" of its contract to administer the city's sales and use tax ordinances, and "[i]f the cause for termination is not cured within the time specified in the notice, the Board shall not administer the ordinance until the cause for termination is removed and a new contract for the administration of the ordinance executed." (§ 7203.5.)

In answer to the question presented, therefore, we conclude that the San Diego City "transient transportation tax" is a use tax for purposes of administering local sales and use tax ordinances.

*****