[No. A068638. First Dist., Div. Four. May 20, 1996.]

CITY OF OAKLAND et al., Petitioners, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
CALIFORNIA BEVERAGE RETAILER COALITION et al., Real Parties in Interest.

744

**COUNSEL**

Jayne W. Williams, City Attorney, Joyce M. Hicks and Randolph W. Hall, Assistant City Attorneys, Robert J. Graham and Mark P. Wald, Deputy City Attorneys, Siegel, Yee & Jonas and Dan Siegel for Petitioners.

John L. Fellows III, City Attorney, as Amicus Curiae on behalf of Petitioners.

No appearance for Respondent.

Rogers, Joseph, O'Donnell & Quinn, Renée D. Wasserman, Donahue, Gallagher, Woods & Wood and A. Clifford Allen for Real Parties in Interest.

Pillsbury, Madison & Sutro, James M. Seff, Kevin M. Fong and J. Daniel Davis as Amici Curiae on behalf of Real Parties in Interest.

**OPINION**

**REARDON, J.**—Many California cities must grapple with nuisances associated with alcoholic beverage sale establishments. Some local entities have

adopted ordinances to identify those activities associated with alcoholic beverage sales that constitute nuisances and to eliminate their attendant threat to the public health and welfare by means of an administrative process. The proprietors of alcoholic beverage sale establishments challenge these ordinances, arguing that they trod on the state's exclusive right to regulate and tax alcoholic beverage sales. We hold that a city ordinance addressing nuisance problems associated with alcoholic beverage sale establishments does not improperly regulate preexisting grandfathered[1] licensees or tax licensees for regulatory purposes.

In this case, petitioner City of Oakland (city) enacted an ordinance regulating nuisances associated with alcoholic beverage establishments. Real parties in interest California Beverage Retailer Coalition and Village Market filed an action against the city, seeking a declaratory judgment that the ordinance was invalid, an injunction precluding its enforcement, and monetary damages. The trial court granted summary adjudication on two of six causes of action, concluding that the city ordinance illegally regulated holders of earlier-granted alcoholic beverages licenses and taxed these licensees in violation of state law. (See Cal. Const., art. XX, § 22; Bus. & Prof. Code, § 23790.)[2] The city and others petitioned for a writ of mandate and prohibition, seeking to compel the trial court to vacate its summary adjudication order and enter an order denying the motion for summary adjudication. We issued an alternative writ and now grant the city's petition.

## I. Facts

In July 1993, petitioner city enacted an ordinance as a one-year pilot program to address public nuisance problems associated with certain alcoholic beverage sale establishments in specified areas of the city. (See Oakland Planning Code, §§ 15000-15530 [Ord. No. 11624].) Under the ordinance, the sale of alcoholic beverages in the city is deemed to be an approved commercial activity as long as the merchant complies with the city's "Deemed Approved Performance Standards."[3] Each merchant must post a notice of these standards. (*Id.*, § 15320.) If the city receives a

---

[1] "Grandfathered" businesses are nonconforming uses that are not required to seek permits under local zoning ordinances enacted after they were in business. (See *Korean American Legal Advocacy Foundation* v. *City of Los Angeles* (1994) 23 Cal.App.4th 376, 397 [28 Cal.Rptr.2d 530].)

[2] All statutory references are to the Business and Professions Code unless otherwise indicated.

[3] "An Activity shall retain its Deemed Approved Status only if it conforms with all of the following Deemed Approved Performance Standards: [¶] (a) That it does not result in adverse effects to the health, peace or safety of persons residing or working in the surrounding area. [¶] (b) That it does not result in jeopardizing or endangering the public health or safety of

complaint that these standards have been violated, an administrative hearing must be conducted to review the complaint. (*Id.* § 15340.) The hearing officer must determine if the merchant has conformed to the performance standards and, if the merchant has not, may impose conditions on the use of the property to ensure compliance. (*Ibid.*) If the merchant fails to comply with these conditions, the deemed approved status may be revoked. (*Id.* § 15350.) Once administrative appeals to the planning commission and city council are exhausted, the city may seek to have the activity abated as a nuisance. (*Id.* §§ 15360-15370, 15510(c).) The city may also refer the matter to the Department of Alcoholic Beverage Control for revocation of the merchant's liquor license. (See Bus. & Prof. Code, §§ 24200-24211.) To support the pilot project, most alcoholic beverage sale licensees within the city will be assessed a $600 fee. An additional $200 reinspection fee may be imposed on an estimated 10 percent of the alcoholic beverage establishments covered by the ordinance.[4] (Oakland Planning Code, §§ 15400, 15510(f).)

In November 1993, real parties in interest California Beverage Retailer Coalition and Village Market and others[5] filed a complaint against the city, seeking declaratory and injunctive relief and damages. The complaint alleged that the ordinance was preempted by state law, violated due process and equal protection, and infringed civil rights. It also sought a preliminary injunction to preclude enforcement of the ordinance pending trial on the merits of the complaint. In December 1993, petitioner Coalition on Alcohol

---

persons residing or working in the surrounding area. [¶] (c) That it does not result in repeated nuisance activities within the premises or in close proximity of the premises, including but not limited to disturbance of the peace, illegal drug activity, public drunkenness, drinking in public, harassment of passersby, gambling, prostitution, sale of stolen goods, public urination, theft, assaults, batteries, acts of vandalism, excessive littering, loitering, graffiti, illegal parking, excessive loud noises, especially in the late night or early morning hours, traffic violations, curfew violations, lewd conduct, or police detentions and arrests. [¶] (d) That it does not result in violations to any applicable provision of any other city, state, or federal regulation, ordinance or statute. [¶] (e) That its upkeep and operating characteristics are compatible with and will not adversely affect the livability or appropriate development of abutting properties and the surrounding neighborhood." (Oakland Planning Code, § 15210.)

[4]Full service restaurants, except those located on East 14th Street, Foothill Boulevard, MacArthur Boulevard, West MacArthur Boulevard, San Pablo Avenue north of 16th Street, and Edes Avenue between Clara Street and Bergedo Avenue, are exempt from the ordinance and are not required to pay the fee.

[5]The California Beverage Retailer Coalition is a nonprofit organization of alcoholic beverage retailers. Village Market is a retail grocery doing business in Oakland and operates under a valid off-sale liquor license issued by the State of California before the September 1, 1993, operative date of the Oakland ordinance. The third plaintiff in the original complaint—Clem Daniels, Inc.—is not a plaintiff in the second amended complaint and is not a real party in interest on appeal. For convenience, this opinion refers to the California Beverage Retailer Coalition and Village Market as "CBRC."

Outlet Issues[6] was granted leave to intervene and filed a complaint in intervention in this matter. At the hearing on the motion for preliminary injunction, the trial court found that the ordinance was preempted by state law and that the restrictions and conditions imposed by the ordinance were impermissibly retroactive. The trial court granted the preliminary injunction later that month, barring enforcement of the ordinance. The city and CAOI appealed. In September 1994, we reversed the order granting the preliminary injunction, finding that there was no clear and imminent danger of irreparable harm. (See *California Beverage Retailer Coalition* v. *City of Oakland* (Sept. 20, 1994) A064898 [nonpub. opn.].)[7]

In November 1994, CBRC filed its second amended complaint. It alleged six causes of action—preemption by article XX of the California Constitution, violation of section 23790, unlawful taxation in violation of article XX of the California Constitution, and violations of due process, equal protection and civil rights. CBRC also moved for summary adjudication on the second and third causes of action alleging improper regulation in violation of section 23790 and unlawful taxation in violation of the state Constitution. The city and CAOI opposed the motion, but it was granted by the trial court.

In January 1995, the trial court filed its order granting summary adjudication on these two causes of action. It found no triable issue of fact existed on these causes of action and ruled in CBRC's favor on the law. It concluded that the ordinance was preempted by section 23790 because it regulates previously existing licensees. It also found that the fees required by the ordinance were illegal because the power to regulate and tax alcoholic beverages belongs exclusively to the state. Its order anticipated trial on the unresolved matters in this case.

The city petitioned this court for a writ of mandate or prohibition. The city argues that the trial court erred as a matter of law in concluding that the ordinance was preempted by state law. It seeks either a peremptory writ of mandate directing the trial court to vacate and set aside its order granting summary adjudication and entering a denial order instead, or an alternative writ directing the trial court to show cause why it should not be so directed. In January 1996, we issued an alternative writ.

---

[6]The Coalition on Alcohol Outlet Issues consists of the California chapter of the National Black Alcoholism Council, the California Latino Alcohol and Other Drug Coalition, the Narcotics Education League, Jubilee West Inc., Interfaith Prevention Program, Inc., and Alcohol Policy Network. This group supports the city's ordinance. For convenience, all these groups will be referred to as "CAOI."

[7]The city asks us to take judicial notice of the record in *California Beverage Retailer Coalition* v. *City of Oakland, supra*, A064898. We have done so. (See Evid. Code, §§ 452, subd. (d)(1), 459, subd. (a).)

## II. MANDATE[8]

■ First, we must determine whether we may review the order granting summary adjudication on a petition for writ of mandate. A writ of mandate may be issued by any court to an inferior tribunal to compel the admission of a party to the use or enjoyment of a right to which it is entitled and from which it is unlawfully precluded by the inferior tribunal. (Code Civ. Proc., § 1085.) Typically, the writ will not issue if there is a plain, speedy and adequate remedy in the ordinary course of law. (*Id.* § 1086.)

An order granting partial summary judgment—or summary adjudication —is not an appealable order. Mandate may be granted to review an order granting summary adjudication. (See *Field Research Corp.* v. *Superior Court* (1969) 71 Cal.2d 110, 111 [77 Cal.Rptr. 243, 453 P.2d 747]; *Mason* v. *Superior Court* (1985) 163 Cal.App.3d 989, 994 [210 Cal.Rptr. 63]; see 8 Witkin, Cal. Procedure (3d ed. 1985) Extraordinary Writs, § 98, pp. 737-738.)

There is not yet a final judgment in this case, as the trial court has ruled on only two of six causes of action. ■ In most cases, an interim order must await review on appeal from the final judgment. However, in cases of significant legal impact, appellate courts may consider a petition for an extraordinary writ. The adequacy of an appellate remedy depends on the circumstances of the case, vesting a large measure of discretion in the appellate court to grant or deny a writ. (*San Gabriel Tribune* v. *Superior Court* (1983) 143 Cal.App.3d 762, 770 [192 Cal.Rptr. 415].)

■ Several factors cause us to exercise our discretion and consider the merits of the petition at this time. First, the issues in this case present significant legal questions of constitutional and statutory interpretation. If the court permits CBRC to go to trial based on erroneous rulings of law, substantial trial expenses will be needlessly imposed on the city and the public. (See, e.g., *San Diego Unified Port Dist.* v. *Superior Court* (1977) 67 Cal.App.3d 361, 364-365 [136 Cal.Rptr. 557].) This factor tends to make later review on appeal an inadequate remedy. (*City of Glendale* v. *Superior Court* (1993) 18 Cal.App.4th 1768, 1776-1777 [23 Cal.Rptr.2d 305]; see *Hampton* v. *Superior Court* (1952) 38 Cal.2d 652, 657 [242 P.2d 1] [prohibition]; *Bricklayers & Masons Union No. 1* v. *Superior Court* (1963) 216 Cal.App.2d 578, 582 [31 Cal.Rptr. 115] [prohibition]; see also 8 Witkin,

---

[8]The issue of the absence of an adequate remedy in the ordinary course of law has already been determined by the granting of an alternative writ. (*Brown* v. *Superior Court* (1971) 5 Cal.3d 509, 515 [96 Cal.Rptr. 584, 487 P.2d 1224].) We include this part to explain our reason for granting the alternative writ.

Cal. Procedure, *supra*, Extraordinary Writs, §§ 101, 116, at pp. 739-740, 751-753.)

Second, the public interest supports an immediate review of the trial court's ruling. When the validity of a public agency's action is at issue, the public interest in a speedy determination of the matter may also make an appeal inadequate. (See *Millbrae School Dist.* v. *Superior Court* (1989) 209 Cal.App.3d 1494, 1496-1497 [261 Cal.Rptr. 409].) A number of municipalities have ordinances similar to the one challenged by CBRC or are interested in adopting one. The issues presented in this action are of significance to other California communities struggling with similar nuisances and criminal activity centering on establishments that sell alcoholic beverages.[9] (See, e.g., *City of Glendale* v. *Superior Court, supra*, 18 Cal.App.4th at p. 1777.) The fact that it is in the public interest to resolve this controversy as expeditiously as possible tends to weigh in favor of the exercise of our discretion to consider the petition for writ of mandate, rather than requiring the city to await a later appeal. (See *City of Huntington Beach* v. *Superior Court* (1978) 78 Cal.App.3d 333, 339-340 [144 Cal.Rptr. 236] [error in liability portion affects scheduled damage trial].)

Third, the issues presented are questions of law, making their immediate resolution on a petition for writ of mandate appropriate. Mandate will lie if the trial court has a clear, present and usually ministerial duty and the city has a clear, present and beneficial right of performance of that duty. However, the city may not invoke mandamus to control a trial court's exercise of discretion. (See *Residents for Adequate Water* v. *Redwood Valley County Water Dist.* (1995) 34 Cal.App.4th 1801, 1806 [41 Cal.Rptr.2d 123]; see *San Gabriel Tribune* v. *Superior Court, supra*, 143 Cal.App.3d at p. 771.) On a motion for summary adjudication, the trial court has no discretion to exercise. If a triable issue of material fact exists as to the challenged causes of action, the motion must be denied. If there is no triable issue of fact, the motion must be granted. (Code Civ. Proc., § 437c, subd. (f).) If the trial court errs, it has made an error of law, which automatically constitutes an abuse of discretion. Under these circumstances, obtaining relief by means of mandate may be proper. If it appears that the trial court erred, the appellate court may exercise its discretion to entertain the writ in order to avoid unnecessary trial court proceedings. (*Whitney's at the Beach* v. *Superior Court* (1970) 3 Cal.App.3d 258, 266 [83 Cal.Rptr. 237].)

---

[9]The cities and towns joining as amici curiae in support of the city are the Cities of Alameda, Anaheim, Bakersfield, Carlsbad, Chico, Cypress, Fresno, Glendale, Lemon Grove, Lodi, Los Altos, Monterey, Redlands, Sacramento, San Jose, Santa Cruz, Santee, Torrance and Walnut Creek and the Town of Los Gatos.

If the significant legal issues of statewide interest are resolved in favor of the validity of the city's ordinance, to await a later appeal in order to make this determination would cause needless expense to the city, the CBRC and the public. Thus, we conclude that this is an appropriate matter to be considered on a petition for writ of mandate.

## III. STATUTORY CLAIM

### A. *Section 23790*

■■■ The trial court concluded that the Oakland ordinance was preempted by section 23790 because it regulates previously existing licensees. Thus, it granted CBRC summary adjudication on its second cause of action for declaratory and injunctive relief based on its allegation that the Oakland ordinance violated section 23790. In its petition for writ of mandate, the city contends that the trial court erred in granting summary adjudication on this cause of action because it wrongly concluded that the ordinance was preempted. It argues that the trial court based its decision on cases that did not address the specific issue presented in this case. (See *Korean American Legal Advocacy Foundation* v. *City of Los Angeles, supra,* 23 Cal.App.4th 376; see also *Boccato* v. *City of Hermosa Beach* (1994) 29 Cal.App.4th 1797 [35 Cal.Rptr.2d 282].)

The city frames the issue in this manner—does section 23790 preclude it from enforcing an ordinance setting up a new mechanism to control nuisance and criminal activities that were regulated *before* enactment of this ordinance, if the new mechanism applies to an alcoholic beverage sales establishment in operation before the ordinance was enacted?[10] The ordinance imposes no new regulation on alcoholic beverage sales establishments, it reasons—it simply collects various, scattered nuisance and criminal regulations that exist in other laws and creates a new means of enforcing them. Thus, the city reasons, its ordinance is not preempted by section 23790. Amici curiae California cities and towns have filed an amicus curiae brief in support of the city's position. (See fn. 9, *ante.*) For its part, CBRC contends that the issue is not whether the ordinance is preempted by section 23790, but simply whether this statute precludes a retroactive land use ordinance which interferes with the sale of alcoholic beverages by a licensee. Amici curiae Beer Institute of California, California Beer and Wine Wholesalers

---

[10]Although neither party addresses this specific point, CBRC does not contend that the alcoholic beverage sales establishments were in operation before the city began regulating nuisances and criminal activities.

Association, Inc., and Wine Institute have filed an amicus curiae brief in support of CBRC's opposition to the petition for writ of mandate.[11]

The pertinent part of section 23790 provides that "[n]o retail license shall be issued for any premises which are located in any territory where the exercise of the rights and privileges conferred by the license is contrary to a valid zoning ordinance of any county or city. *Premises which had been used in the exercise of those rights and privileges at a time prior to the effective date of the zoning ordinance may continue operation under the following conditions*: [¶] (a) The premises retain the same type of retail liquor license within a license classification. [¶] (b) The licensed premises are operated continuously without substantial change in mode or character of operation. . . ." (Italics added.) This statute was originally enacted in 1935. (*Town of Los Gatos v. State Bd. of Equal.* (1956) 141 Cal.App.2d 344, 346-347 [296 P.2d 909]; see Stats. 1935, ch. 330, § 15, p. 1130.) It prohibits the issuance of alcoholic beverage retail licenses for any premises located in a zone where the exercise of the rights conferred by that license would violate a valid local zoning ordinance, unless the premises had been used in the exercise of such rights before the effective date of the ordinance. (*Board of Trustees v. Munro* (1958) 163 Cal.App.2d 440, 447 [329 P.2d 765].)

■ When reviewing the Oakland ordinance and section 23790, we must interpret both. Thus, the standard of review is one of de novo review. The construction of statutes and the ascertainment of legislative intent are questions of law. We are not limited by the trial court's interpretation, nor by the evidence presented on the issue in the trial court. (See *Bravo Vending v. City of Rancho Mirage* (1993) 16 Cal.App.4th 383, 391-392 [20 Cal.Rptr.2d 164].)

### B. *Grandfathered Rights*

#### 1. *Legislative Argument*

■ Preliminarily, CBRC contends that Oakland's role in the legislative history of section 23790 constitutes an admission that the city ordinance

---

[11]The Legislative Counsel of California rendered an opinion in 1993 concluding that a court reviewing the Oakland ordinance would find that it was preempted by article XX, section 22 of the California Constitution and section 23790. However, the same report also noted that a contrary argument could be made that the ordinance "regulates a nuisance aspect of the liquor business, effects of consumption, that is not covered by state law either expressly or by implication."

impermissibly regulates grandfathered alcoholic beverage sales establishments.[12] In 1982, the city proposed an amendment to section 23790 providing for the expiration of grandfather rights under certain circumstances. The proposed amendment would have provided for the expiration of grandfather rights when continuous use ended. It would also have distinguished between types of alcoholic beverage licenses when applications were submitted to the Department of Alcoholic Beverage Control to reopen discontinued alcoholic beverage sales establishments. The city's intent was to prevent beer-and-wine-only establishments from being upgraded to full scale liquor stores and retaining the prior owner's grandfather rights. Under the proposed amendment, the premises used in the exercise of an alcoholic beverage license before the enactment of a local zoning ordinance would continue in that operation only if the same type of retail license were used continuously at the same location. In that legislative session, the Legislature enacted a provision defining what constituted a break in the continuous operation of an alcoholic beverage sales establishment. (See § 23790, subd. (b) [now subd. (b)(1)], as amended by Stats. 1982, ch. 474, § 1, p. 2076.)

Oakland officials explained that the purpose of the city's proposed amendment was "an attempt to adjust existing state law to allow the city to control the location of alcoholic beverage sales activities in a more logical and successful manner." In its letter urging the Legislature to amend section 23790, the city's legislative advocate stated that this statute provided that an establishment licensed before the effective date of a zoning ordinance would be unaffected by that zoning ordinance because of the establishment's grandfather rights. The letter added that "the state preempts local jurisdictions in the field of licensing alcoholic beverage establishments." CBRC contends that these 1982 arguments urging amendment of section 23790 contradict the city's claim that this statute does not preclude the application of the Oakland ordinance to grandfathered alcoholic beverage licensees. (See, e.g., *California Court Reporters Assn.* v. *Judicial Council of California* (1995) 39 Cal.App.4th 15, 30-31 [46 Cal.Rptr.2d 44] [Judicial Council's earlier requests for legislative authority to enact rules counters present argument that no legislative authority is now needed].)

Having reviewed this matter carefully, we are satisfied that the issues are sufficiently distinct such that the city's previous position does not contradict its contentions in the present case. In 1982, the city advocated a

---

[12]Although, for convenience, we state this issue in terms of CBRC's objections to the ordinance, we do not mean to suggest that we believe that CBRC has the burden of proof on this or any other issue presented in the petition. As the moving party, the city has the obligation to prove that the ordinance passes muster.

general change in the language of section 23790 defining more clearly what constituted "continuous use" for purposes of determining whether the city had authority to regulate more alcoholic beverage sales establishments. Much of the "argument" that CBRC cites is the city's summary of the then existing law—little more than a paraphrase of the text of section 23790. The city and CBRC do not dispute what section 23790 *says*, but what its language *means*—whether it applies at all in the context presented by this case.

More importantly, the issues presented by the proposed legislation and the case at bar are significantly different. In 1982, the city sought a legislative amendment that would have allowed it more authority to limit the number and location of alcoholic beverage *licenses* issued within certain zones in the city. In the ordinance now before us, the city attempts to create an *administrative mechanism* to regulate nuisance and criminal activities that occur near alcoholic beverage sales establishments. This ordinance does not affect alcoholic beverage licenses or attempt to limit or restrict them. (See pt. IV. B.-D., *post*.) The city's recitation of the text of a statute in the context of a request for legislative clarification that some alcoholic beverage establishments should no longer be entitled to the protection of grandfather status does not shed any light on the issue presented in our case—whether the new administrative mechanism may properly be applied to alcoholic beverage sales establishments that have been in continuous operation since before the ordinance was enacted. Thus, we conclude that the city's earlier statements on an unrelated issue do not preclude it from making the arguments that it now does in favor of its interpretation of section 23790.

### 2. *Nuisance and Criminal Activities Control*

The city contends that the ordinance merely creates an administrative mechanism for enforcing nuisance and criminal laws that are applicable to all alcoholic beverage establishments, even those in operation before the ordinance's effective date. CBRC couches the issue somewhat differently—it argues that the Oakland ordinance creates a mechanism in the form of a retroactive land use ordinance that may result in the denial of the right to sell alcoholic beverages. As we have already concluded, the purpose of this ordinance is to control and abate nuisances and criminal activities occurring near alcoholic beverage sales establishments. (See *Korean American Legal Advocacy Foundation* v. *City of Los Angeles*, *supra*, 23 Cal.App.4th at p. 389 [no invasion of state power to regulate alcohol sales]; see pt. IV. D., *post*.) Thus, we begin our legal analysis of the applicability of section 23790 by considering this purpose.

By ordinance, a city council may declare what constitutes a nuisance. (Gov. Code, § 38771.) A city may bring an action to abate a public nuisance.

(Code Civ. Proc., § 731.) The California Supreme Court permits the abatement of even a grandfathered business if it constitutes a nuisance. In one case, the high court reasoned that zoning laws do not customarily interfere with existing conditions, but regulate future use of land. However, if a business constitutes a nuisance, it can still be abated in a proper exercise of the police power. (*Jones* v. *City of Los Angeles* (1930) 211 Cal. 304, 311 [295 P. 14].) In another, it reaffirmed that the right to continue a previously existing lawful business may be revoked if the business is found to be a nuisance. The abatement of such an existing business would be a lawful exercise of the police power, the court ruled. (*Livingston Rock etc. Co.* v. *County of L. A.* (1954) 43 Cal.2d 121, 128 [272 P.2d 4].) In a third case, the Supreme Court ruled that a city may determine what constitutes a nuisance and may take action to abate such a nuisance, despite the fact that the safety standards that had been incorporated in a building code sought to be enforced was enacted after construction of the building. (See *City of Bakersfield* v. *Miller* (1966) 64 Cal.2d 93, 96, 100 [48 Cal.Rptr. 889, 410 P.2d 393], cert. den. 384 U.S. 988 [16 L.Ed.2d 1005, 86 S.Ct. 1890].)

These cases support the conclusion that a city may properly enact a local ordinance to control and abate nuisance activities, despite the fact that the business that would be regulated by the ordinance possessed grandfather rights that might ordinarily render it immune from compliance with local ordinances. (See *Livingston Rock etc. Co.* v. *County of L. A., supra,* 43 Cal.2d at p. 128; *Jones* v. *City of Los Angeles, supra,* 211 Cal. at p. 311; see also *City of Bakersfield* v. *Miller, supra,* 64 Cal.2d at pp. 96, 100; *Suzuki* v. *City of Los Angeles* (1996) 44 Cal.App.4th 263, 277-281 [51 Cal.Rptr.2d 880].) If a city may abate a public nuisance despite grandfather rights, then a fortiori a municipality may enforce criminal laws in the face of such a claim of prior existing lawful operation.

CBRC counters that while these cases may support the city's authority to abate a public nuisance or control criminal activities, they did not arise in a context of a zoning ordinance enacted in violation of section 23790. It contends that section 23790 overrides the city's police powers. We disagree. Construing section 23790, it appears to us that the Legislature intended that this provision protect the vested rights of the proprietors of premises engaged in the lawful, licensed sale of alcoholic beverages. Such a business has acquired by the passage of time a vested right to continue in operation to lawfully dispense alcoholic beverages. However, for CBRC's challenge to the ordinance to succeed, we must also read this provision to mean that the Legislature intended that a licensed alcoholic beverage establishment retains a vested right to conduct its operation in a manner that encourages nuisance or criminal activities to occur on or near its premises.

Such a conclusion defies logic. ■ We must construe the statute in a reasonable, commonsense manner consistent with the Legislature's apparent purpose and intent, the application of which will promote wise policy, not absurdity. (See *DeYoung* v. *City of San Diego* (1983) 147 Cal.App.3d 11, 18 [194 Cal.Rptr. 722]; see also 7 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, § 94, pp. 146-148.) ■ To interpret the concept of grandfather rights so far as to allow long-time businesses the freedom to conduct their operations in a manner that promotes nuisances and criminal activities would be absurd. A limited view of grandfather rights is also consistent with wise policy. As another court held when reviewing the applicability of grandfather rights under section 23790 in a different context, it makes sense for the number and type of events allowing nonconforming uses to avoid compliance with updated codes to be narrow and limited. (See *Korean American Legal Advocacy Foundation* v. *City of Los Angeles, supra,* 23 Cal.App.4th at p. 397.)

Nevertheless, CBRC urges us to find that section 23790 invalidates the ordinance because its enforcement may ultimately lead to a loss of a state-issued license to sell alcoholic beverages. However, the city ordinance does not halt operation of a licensed alcoholic beverage establishment. If an alcoholic beverage sales establishment fails to comply with the requirements of the ordinance after numerous administrative attempts to obtain compliance, the ordinance authorizes the city to seek a court order to abate a nuisance or to ask the Department of Alcohol Beverage Control to revoke the license. The city already has *this* authority—independent of this ordinance—which it may use in appropriate cases in the proper exercise of its police power. The ordinance does not create any *new* authority empowering the city to halt operation of an alcoholic beverage sales establishment premises. It merely creates an administrative mechanism that may result in a third party taking action against the alcoholic beverage seller—abatement by a court or license revocation by the Department of Alcoholic Beverage Control.

In sum, we find that the conduct that is regulated by the ordinance—the control and abatement of nuisances and criminal activities—does not fall within the ambit of section 23790. A municipality retains the right to abate nuisances and enforce its criminal laws even in the face of grandfather rights. No business—not even an alcoholic beverage sales establishment regulated by state law—has a vested right to conduct its business in a

manner that attracts public nuisances and encourages criminal activities near its premises.[13]

## C. *Conclusion*

The trial court erred in concluding that CBRC was entitled to a summary adjudication on the second cause of action for declaratory and injunctive relief based on its claim of illegal regulation in violation of section 23790. As the ordinance does not violate this statute, the city is entitled to summary adjudication on the second cause of action.

## IV. CONSTITUTIONAL CLAIM

### A. *Article XX, Section 22*

The city also contends that the trial court erred in granting CBRC summary adjudication on its third cause of action because it wrongly concluded that the ordinance's fees constitute an unlawful taxation. The third cause of action sought declaratory and injunctive relief, alleging unlawful taxation in violation of section 22 of article XX of the California Constitution. The trial court held that the fees imposed pursuant to the ordinance violated article XX, section 22 of the California Constitution. In its response to the city's petition for writ of mandate, CBRC contends that the $600 annual fee and the subsequent fees constitute unlawful license fees. Amici curiae Beer Institute of California, California Beer and Wine Wholesalers Association, Inc., and Wine Institute filed an amicus curiae brief in support of CBRC.

The Constitution provides that "[t]he State of California, subject to the internal revenue laws of the United States, shall have the exclusive right and power to license and regulate the . . . sale . . . of alcoholic beverages within the State . . . . [¶] . . . [¶] The Department of Alcoholic Beverage Control shall have the exclusive power . . . to license the . . . sale of alcoholic beverages in this State, and to collect license fees or occupation taxes on account thereof. . . ." (Cal. Const., art. XX, § 22; see *Board of Trustees* v. *Munro, supra,* 163 Cal.App.2d at p. 445.) This provision of the

---

[13]We are aware that other courts have analyzed the question of violation of section 23790 as a preemption question. (See *Suzuki* v. *City of Los Angeles, supra,* 44 Cal.App.4th at pp. 266, 281; *Boccato* v. *City of Hermosa Beach, supra,* 29 Cal.App.4th at p. 1807; *Korean American Legal Advocacy Foundation* v. *City of Los Angeles, supra,* 23 Cal.App.4th at p. 394.) However, our conclusion that the city's authority to control and abate nuisances and criminal activities exists despite any grandfather rights makes it unnecessary for us to also consider whether the ordinance is preempted by section 23790. Clearly, if the statute does not preclude the city's use of its authority to control and abate nuisances and criminal activities, the state statute would not preempt this ordinance.

state Constitution took effect in 1933 when the Twenty-first Amendment to the United States Constitution took effect. (*City of Rancho Cucamonga* v. *Warner Consulting Services, Ltd.* (1989) 213 Cal.App.3d 1338, 1343 [262 Cal.Rptr. 349].) While it originally granted municipalities the right to license the manufacture, disposition or sale of alcoholic beverages, article XX, section 22 was amended in 1934 to delete this authority. (*L. A. Brewing Co.* v. *Los Angeles* (1935) 8 Cal.App.2d 391, 394 [48 P.2d 71].)

B. *License Tax*

The trial court concluded that the state Constitution precluded all city taxation applying solely to alcoholic beverage licensees. Specifically, it found that "there is no precedent in the area of alcoholic beverage law to allow for a municipality to impose a fee solely on sellers of alcoholic beverages because of the nature of their business." ■ On the petition for mandamus relief, the city first contends that the fees imposed by its ordinance do not constitute a license tax. It argues that the ordinance's fees are not imposed as a condition to the issuance of a license, but are required to pay for the costs of regulating nuisance and criminal activities associated with alcoholic beverage sales establishments.

The California Constitution grants the state Department of Alcoholic Beverage Control the exclusive power to collect license fees or occupation taxes related to alcoholic beverage sales. (Cal. Const., art. XX, § 22.) Liquor licenses are not subject to local license or occupation taxes. (*Roehm* v. *County of Orange* (1948) 32 Cal.2d 280, 290-291 [196 P.2d 550].) The Oakland ordinance does not require the payment of a fee on the issuance of a license. It grants deemed approved status to existing alcoholic beverage retailers and requires them to pay a fee to administer the enforcement of the ordinance's requirements. (Oakland Planning Code, §§ 15400, 15510(f).)

Courts distinguish between municipal revenue taxes that may be preempted by state law and fees properly imposed by a city pursuant to its regulatory authority to control and supervise a business that imposes an unusual burden on the local entity for services. For example, in one case, a city imposed a permit fee on house movers. State law specifically prohibits any municipal *license fee* to be imposed on intercity transportation. Despite this statute, the appellate court upheld the ordinance requiring the fee. The court found that purpose of the fee was to pay city inspection and administrative costs associated with house moving. The amount of the fee was based on reasonably anticipated costs of inspection and administration of the permitted house moving activities. Thus, the court concluded that the ordinance was a regulatory one and that the fee imposed was not preempted by

the prohibition on license fees. (*Housemoving Contractors Assn.* v. *City of Glendale* (1981) 123 Cal.App.3d 673, 675 [176 Cal.Rptr. 751]; see Pub. Util. Code, §§ 4303, 4304.)

We find this precedent persuasive in our own case. CBRC's criticism of this case on the ground that the license tax prohibition in *Housemoving Contractors Assn.* v. *City of Glendale, supra,* 123 Cal.App.3d 673 was statutory rather than constitutional strikes us as a distinction without a difference. A state statute, like a state constitutional provision, would prevail over a local ordinance if a conflict occurred. (See *Cohen* v. *Board of Supervisors* (1985) 40 Cal.3d 277, 290 [219 Cal.Rptr. 467, 707 P.2d 840] [local legislation in conflict with general law is void]; *Korean American Legal Advocacy Foundation* v. *City of Los Angeles, supra,* 23 Cal.App.4th at p. 384.) Both state laws specifically prohibit municipal license taxes. If the house moving fee does not constitute a license tax, neither does the fee imposed pursuant to Oakland's ordinance.

Nevertheless, CBRC and its amici curiae urge us to conclude that because the failure to pay the required fee may result in summary abatement and loss of the privilege of engaging in business, the fee constitutes a license tax. Neither abatement nor loss of the privilege of doing business will occur unless a court orders abatement or the Department of Alcoholic Beverage Control revokes the business's state-issued liquor license. (See §§ 24200-24211; Civ. Code, §§ 3490-3496; Oakland Planning Code, § 15510(c).) That the ultimate result of a failure to pay the city's required fee might be abatement or revocation of the state liquor license does not transform a regulatory fee to a license tax. Thus, we find that the ordinance's fees do not constitute an impermissible license tax.

## C.  *Tax or Fee*

The trial court impliedly concluded that the ordinance's fees constituted a tax on alcoholic beverage retailers. In its next claim in support of its petition for mandate, the city contends that the fees imposed pursuant to the ordinance are not taxes at all, but proper regulatory fees imposed without violating article XX, section 22 of the California Constitution. CBRC counters by arguing that the fee is a impermissible revenue-generating measure—that is, a tax disguised as a fee.

The state Constitution grants the state Department of Alcoholic Beverage Control the exclusive power to tax alcoholic beverage sales. (Cal. Const., art. XX, § 22; see *Board of Trustees* v. *Munro, supra,* 163 Cal.App.2d at p. 445.) A local tax on alcoholic beverage sales is preempted by state law.

(*A.B.C. Distributing Co.* v. *City and County of San Francisco* (1975) 15 Cal.3d 566, 575 [125 Cal.Rptr. 465, 542 P.2d 625]; see *Century Plaza Hotel Co.* v. *City of Los Angeles* (1970) 7 Cal.App.3d 616, 626 [87 Cal.Rptr. 166] [5 percent local excise tax on alcoholic beverage sales held illegal].) However, alcoholic beverages retailers may properly be required to pay their fair share of the cost of government. (*Id.* at p. 626.) If a business imposes an unusual burden on city services, a municipality may properly impose fees pursuant to its police powers. (See, e.g., *Housemoving Contractors Assn.* v. *City of Glendale, supra,* 123 Cal.App.3d at p. 675; *United Business Com.* v. *City of San Diego* (1979) 91 Cal.App.3d 156, 165-166 [154 Cal.Rptr. 263].) A local entity may not impose a tax on alcoholic beverage retailers under the guise of a fee. (See Cal. Const., art. XX, § 22.) Thus, we must determine whether the Oakland ordinance's fees are regulatory or are hidden taxes intended to generate unrelated revenue for the city.

The determination of whether the actual purpose of an ordinance is regulatory or revenue raising is a question of fact. (*United Business Com.* v. *City of San Diego, supra,* 91 Cal.App.3d at p. 165.) In the trial court, the parties posed no factual issues to be resolved, only legal questions. In its order granting summary adjudication, the trial court recited that the parties did not dispute that the fees generated revenue to fund the ordinance's programs. As the meaning of this recitation is somewhat ambiguous on this issue, we will consider how courts factually distinguish a fee from a tax.

■ To determine whether the purpose of the ordinance is regulatory or revenue generating, the court looks to the substantive provisions of the ordinance, not merely its title and form. If revenue is the primary purpose of the ordinance and regulation is merely incidental, then the imposition is a tax. If regulation is the primary purpose, the mere fact that incidental revenue is also obtained does not make the imposition a tax. Generally, when a fee is imposed for a regulatory purpose and the ordinance requires compliance with conditions in addition to the payment of the prescribed sum, the imposed sum is a not a tax, but is a fee properly imposed pursuant to the local entity's police power. When the sum is exacted solely for a revenue purpose and its payment gives the right to carry on the business without any further condition, it is a tax. (See *United Business Com.* v. *City of San Diego, supra,* 91 Cal.App.3d at p. 165; see also *Ainsworth* v. *Bryant* (1949) 34 Cal.2d 465, 473 [211 P.2d 564] [regardless of formal title, character of tax determined by its incidents and from natural and legal effect of zoning ordinance language].)

Fees charged in connection with regulatory activities that do not exceed the reasonable costs of providing services necessary to the activity for which

the fee is charged and which are not levied for unrelated revenue purposes do not constitute a tax. (*Pennell* v. *City of San Jose* (1986) 42 Cal.3d 365, 375 [228 Cal.Rptr. 726, 721 P.2d 1111]; *San Diego Gas & Electric Co.* v. *San Diego County Air Pollution Control Dist.* (1988) 203 Cal.App.3d 1132, 1145-1146 [250 Cal.Rptr. 420].) Generally, a regulatory fee cannot exceed the sum reasonably necessary to cover the costs of the regulatory purpose sought. These costs include all those incident to the issuance of the permit, investigation, inspection, administration, maintenance of a system of supervision and enforcement. (*United Business Com.* v. *City of San Diego*, *supra*, 91 Cal.App.3d at p. 165.) The municipality need only apply sound judgment and consider probabilities according to the best honest view of informed officials in setting the amount of the regulatory fee. (*Id.* at p. 166.)

To establish that a fee is a regulatory fee and not a tax, the local entity should prove the estimated costs of the regulatory activity and the basis for determining the manner in which the costs are apportioned, so that the charges allocated to a payor bear a fair or reasonable relationship to the payor's burdens on or benefits from the regulatory activity. (*San Diego Gas & Electric Co.* v. *San Diego County Air Pollution Control Dist.*, *supra*, 203 Cal.App.3d at p. 1146.) It is not necessary that the payor perceive the regulation to be a benefit. A regulatory fee may be imposed pursuant to the local governmental entity's police power when the fee constitutes an amount necessary to carry out the purposes and provisions of the regulation. (*Id.* at p. 1146 fn. 18.)

In our case, city documents show that the annual operating budget for the program would be recovered in fees charged to alcoholic beverage retail establishments pursuant to the ordinance. Reinspection fees would be charged only to establishments that were found not to be in compliance with the terms of the ordinance. The estimated revenues derived from the fees match the program's proposed budget. The Oakland ordinance's revenue is intended to pay the administrative costs of its programs.[14] The ordinance's primary purpose is regulatory—to create an environment in which nuisance and criminal activities associated with alcoholic beverage retail establishments may be reduced or eliminated. Thus, the fee imposed pursuant to the ordinance is not a tax imposed to pay general revenue to the local governmental entity, but is a regulatory fee intended to defray the cost of providing and administering the hearing process set out in the ordinance. (See, e.g., *Pennell* v. *City of San Jose*, *supra*, 42 Cal.3d at p. 375.)

---

[14]At trial, the parties agreed that the fees generated revenue to fund the ordinance's programs.

D. *Regulatory Fee Applied Solely to Alcoholic Beverage Retailers*

▮ The trial court concluded that there was no precedent to allow a city to impose a fee on alcoholic beverage retailers because of the nature of their business. It impliedly agreed with CBRC's argument that the ordinance improperly singled out alcoholic beverage retailers. It its petition for writ of mandate, the city argues that the trial court erroneously concluded that the state Constitution prohibits a municipality from imposing a fee on alcoholic beverage establishments. CBRC counters that the trial court's ruling was correct because the fee was levied only against alcoholic beverage licensees. The city argues that a regulatory fee may be lawfully imposed on alcoholic beverage sales establishments.

As CBRC contends in its opposition to the petition for writ of mandate, a tax that singles out alcoholic beverage retailers is suspect. (*A.B.C. Distributing Co.* v. *City and County of San Francisco, supra,* 15 Cal.3d at p. 575.) However, we have already concluded that the ordinance requires the payment of a regulatory fee, not a tax of any kind. (See pt. III. B., C., *ante.*) To the extent that this suspect character also applies to regulatory fees, we note that to label a fee as "suspect" does not compel the finding that the fee is prohibited. As with other businesses, alcoholic beverage establishments may properly be required to pay their fair share of the cost of government. (See *Century Plaza Hotel Co.* v. *City of Los Angeles, supra,* 7 Cal.App.3d at p. 626.) That the fee will probably be paid from revenue derived at least in part from the sale of alcoholic beverages creates only an indirect burden on an alcoholic beverage retailer—one that is insufficient to nullify the otherwise proper imposition of a regulatory fee. (See *A.B.C. Distributing Co.* v. *City and County of San Francisco, supra,* at p. 575 [tax case].)

CBRC does not dispute that the city may properly regulate nuisance and criminal activities through its exercise of its police power, but it argues that these police powers are overridden by article XX, section 22 of the California Constitution, when the regulation involves alcoholic beverages. Thus, the issue is whether a local entity's authority to regulate alcoholic beverage sellers properly derives from the city's police power under article XI, section 7 of the California Constitution. (See *City of Rancho Cucamonga* v. *Warner Consulting Services, Ltd., supra,* 213 Cal.App.3d 1338, 1345.) A local entity's authority to regulate state-licensed alcoholic beverage retailers derives solely from its general police powers. (*Id.* at pp. 1343, 1345.) A city's police powers are as broad as the police power that may be exercised by the Legislature itself. However, in its proper exercise of its police powers, the city may not also violate article XX, section 22. (213 Cal.App.3d at pp. 1344-1345.)

Article XX, section 22 of the California Constitution gives the state Department of Alcohol Beverage Control exclusive jurisdiction to regulate alcohol. (*Korean American Legal Advocacy Foundation* v. *City of Los Angeles, supra,* 23 Cal.App.4th at p. 385.) If the purpose and effect of the city ordinance is to regulate the manufacture, sale, purchase, possession or transportation of alcoholic beverages, the legislation is expressly preempted by the state Constitution. (*Ibid.; Floresta, Inc.* v. *City Council* (1961) 190 Cal.App.2d 599, 606-607 [12 Cal.Rptr. 182].) For example, an express prohibition of the sale of alcoholic beverages at automobile service stations conflicts with article XX, section 22. (*Mussalli* v. *City of Glendale* (1988) 205 Cal.App.3d 524, 528 [252 Cal.Rptr. 299]; see § 23790.5 [by legislative enactment, local entities may now regulate alcoholic beverage sales at service stations].) Despite this constitutional prohibition, the state Legislature has expressed its intent that local entities—not the state—control local matters. (*Jon-Mar Co.* v. *City of Anaheim* (1962) 201 Cal.App.2d 832, 837 [20 Cal.Rptr. 350].) The resolution of the issue before us turns on whether the Oakland ordinance trods on the state's regulatory power or falls within local authority.

Courts have recognized that local regulation of alcoholic beverage retailers may be properly within the local entity's police powers without violating section 22 of article XX of the California Constitution. Generally, this constitutional provision will not preempt a local ordinance when the ordinance does not directly affect the licensee's ability to sell alcoholic beverage to a willing purchaser. (*California Restaurant Assn.* v. *City of Los Angeles* (1987) 192 Cal.App.3d 405, 411 [237 Cal.Rptr. 415] [local ordinance requiring posting of notice warning of alcohol effects on pregnant women was not preempted by Constitution]; see *Daniel* v. *Board of Police Commissioners* (1961) 190 Cal.App.2d 566, 570-571 [12 Cal.Rptr. 226], overruled on other grounds in *Burton* v. *Municipal Court* (1968) 68 Cal.2d 684, 693 [68 Cal.Rptr. 721, 441 P.2d 281] [prohibition of live entertainment at alcoholic beverage establishment does not interfere with licensee's right to sell alcoholic beverages].) The Legislature did not intend that a person licensed to sell alcoholic beverages should be immune from local supervision of any activity that the licensee may pursue in conjunction with the sale of alcoholic beverages. (*Id.* at p. 570.)

For example, the California Supreme Court has held that local ordinances may properly regulate live entertainment in taverns while leaving intact the state's jurisdiction to license the sale of alcoholic beverages. The two types of regulations were held to be independent and distinct. Thus, ordinances relating to live entertainment do not conflict with the state's powers over the

sale of alcoholic beverages. (*Crownover* v. *Musick* (1973) 9 Cal.3d 405, 417-418 [107 Cal.Rptr. 681, 509 P.2d 497], cert. den. *sub nom. Reynolds* v. *City of Sacramento,* 415 U.S. 931 [39 L.Ed.2d 489, 94 S.Ct. 1443]; *Owen* v. *Musick,* 415 U.S. 931 [39 L.Ed.2d 489, 94 S.Ct. 1443], disapproved on another point in *Morris* v. *Municipal Court* (1982) 32 Cal.3d 553, 564-565 [186 Cal.Rptr. 494, 652 P.2d 51].) In another case, an appellate court concluded that a municipality retains the constitutional right to enforce a zoning ordinance that does not permit a cocktail lounge in a shopping center without a use permit. This prerogative was held not to have been preempted by the state's generalized regulation of alcohol sales. (See *Floresta, Inc.* v. *City Council, supra,* 190 Cal.App.2d at pp. 612-613.) In a third case, another appellate court upheld a local ordinance prohibiting persons possessing, using, consuming or under the influence of alcohol from entering or remaining in a modeling studio adjacent to an alcoholic beverage retail establishment. The court found that the ordinance did not attempt to invade the exclusive power given to the state pursuant to article XX, section 22 of the state Constitution to license, regulate or prohibit the sale of alcoholic beverages. (See *Cristmat, Inc.* v. *County of Los Angeles* (1971) 15 Cal.App.3d 590, 594-598 [93 Cal.Rptr. 325]; see also *Mussalli* v. *City of Glendale, supra,* 205 Cal.App.3d at p. 528.) Courts upheld these ordinances because their purpose was properly related to the police powers, distinct from the direct regulation of alcoholic beverage licensees.

CBRC characterizes the Oakland ordinance as a regulation of alcoholic beverage retailer sellers. However, the purpose of the ordinance determines the issue before us. (See *Daniel* v. *Board of Police Commissioners, supra,* 190 Cal.App.2d at p. 571 [purpose of ordinance was to regulate live entertainment furnished in restaurants and cocktail lounges; local ordinance did not violate Cal. Const., art. XX, § 22].) To paraphrase one of these cases, the city may regulate nuisances and criminal activity pursuant to its police power. An ordinance prohibiting nuisance and criminal activities from being conducted on or near the premises of liquor licensees falls within the legitimate scope of the city's police power. The regulation is not intended to control the sale of alcoholic beverages, but to eliminate nuisances and criminal activities. (See *Cristmat, Inc.* v. *County of Los Angeles, supra,* 15 Cal.App.3d at pp. 595-596 [under art. XX, § 22, ordinance may regulate floor shows in places of public entertainment where alcoholic beverages are served]; see also *Mussalli* v. *City of Glendale, supra,* 205 Cal.App.3d at p. 528.) We are satisfied that the ordinance's purpose is the regulation of nuisance and criminal activity—a subject independent and distinct from the regulation of alcoholic beverage sales. Thus, the ordinance does not conflict with the state's authority to regulate alcoholic beverage sales. (See

*Crownover* v. *Musick, supra,* 9 Cal.3d at pp. 417-418; see also *City of Rancho Cucamonga* v. *Warner Consulting Services, Ltd., supra,* 213 Cal.App.3d at pp. 1343-1344; *Mussalli* v. *City of Glendale, supra,* 205 Cal.App.3d at p. 528.)

Our conclusion is consistent with a recent decision of the Second Appellate District holding that the revocation requirements of a similar ordinance did not invade the state's exclusive power to regulate alcohol sales pursuant to article XX, section 22 of the California Constitution. In *Korean American Legal Advocacy Foundation* v. *City of Los Angeles, supra,* 23 Cal.App.4th 376, the city required a conditional use permit for all establishments selling alcoholic beverages. Uses in existence before the operative date of the specific plan requiring a conditional use permit were deemed to be approved conditional use permits. (*Id.* at p. 382.) After fire destroyed businesses in South Central Los Angeles, alcoholic beverage establishments seeking to rebuild were required to comply with the specific plan. Typically, the conditions imposed before rebuilding would be permitted were for the owner to agree to remove graffiti promptly, provide adequate lighting, remove trash, provide a security guard and limit hours of operation. (*Id.* at pp. 382-383.) In addition, the city instituted revocation hearings to revoke or condition an owner's deemed approved status or use permit if the business threatened to become, or became, a nuisance or a law enforcement problem. (*Id.* at p. 383.)

The appellate court found that the Los Angeles ordinance at issue in that case constituted a valid exercise of the city's police powers to control and abate nuisances under article XI, section 7 of the state Constitution. (*Korean American Legal Advocacy Foundation* v. *City of Los Angeles, supra,* 23 Cal.App.4th at p. 389.) It ruled that the city was not preempted by article XX, section 22 from exercising land use control over businesses licensed to sell alcoholic beverages. (23 Cal.App.4th at pp. 384, 389-390.) Although it acknowledged the state's exclusive jurisdiction to regulate alcoholic beverage sales, the court concluded that the ordinance did not directly regulate alcoholic beverage licensees. (*Id.* at p. 388.) It found that the ordinance was not expressly preempted by the state Constitution, that it did not duplicate or contradict state law, and that the statutory scheme codified in the Alcoholic Beverage Control Act did not evidence an intent to occupy the field by implication. (*Id.* at pp. 390-394; see §§ 23000-25762.) *Korean American*'s preemption analysis differs somewhat from ours, but our conclusion is the same—that a city in the exercise of its police powers may undertake to control nuisances occurring near alcoholic beverage sales establishments, without violating the state's exclusive power to regulate the sale of alcoholic beverages. (See 23 Cal.App.4th at pp. 384-394.)

The policy reason for the distinction between a city's improper direct regulation of alcoholic beverage sales and its appropriate use of its police powers applying to alcoholic beverage sales establishments is well established.      As the California Supreme Court has ruled, local governments have a legitimate need to address problems generated by business involvement in activities that may be inimical to the health, welfare and safety of the community. (*Cohen* v. *Board of Supervisors, supra*, 40 Cal.3d at p. 298.) State requirements may be inadequate to meet the demands of densely populated cities. Thus, it becomes proper and necessary to add to state regulations those provisions adapted to the city's special requirements. (*Ibid.*; *Daniel* v. *Board of Police Commissioners, supra*, 190 Cal.App.2d at p. 571; see *Bravo Vending* v. *City of Rancho Mirage, supra*, 16 Cal.App.4th at p. 411.) For this reason, a local entity may properly determine that a particular business fosters, profits from and provides an environment for activities proscribed by state law. For example, an ordinance is not transformed into a statute prohibiting crime simply because the city uses its police powers to discourage illegal activities associated with certain businesses. Many regulatory ordinances have a direct impact on the enforcement of state laws that have been enacted to preserve the health, safety and welfare of state and local citizens. This fact does not deprive a local entity of the power to enact them. (See *Cohen* v. *Board of Supervisors, supra*, at pp. 298-299 [licensing ordinance case].)      The legislative history of the ordinance shows that there are substantial geographic, economic or other distinctions that persuade us of the need for local control. (See *id.* at p. 300.)[15]

E. *Federal Bar*

     For its part, CBRC challenges the city's authority under the Twenty-first Amendment to the United States Constitution to tax sellers of alcoholic beverages. (U.S. Const., Amend. XXI.) The trial court found only

---

[15]The record reveals that the application of this ordinance to alcoholic beverage retailers alone was not unreasonable, given the high level of nuisance and criminal activity occurring near these establishments. Oakland's deputy chief of police testified about the proliferation of complaints about nuisance and criminal activities occurring around alcoholic beverage retail sales establishments. He opined that these activities constituted a blight on the neighborhoods where these alcoholic beverage establishments were located and served as a magnet for crime and neighborhood decay. He also stated that the number of police responses around alcoholic beverage establishments was disproportionately high when compared to police activity around adult entertainment facilities, gun dealer outlets, fast food restaurants or gas stations. Nuisance problems associated with alcoholic beverage retailers had risen over several years before the ordinance's enactment and the deputy chief opined that the program established by the ordinance would ". . . 'significantly mitigate the negative impacts that many of these establishments have on the community.' "

that the ordinance violated the state Constitution; it did not rule on whether the ordinance also violated the federal Constitution. The Twenty-first Amendment grants the state authority to tax and regulate liquor licensing, although the state may delegate that authority to local entities. (*City of Rancho Cucamonga* v. *Warner Consulting Services, Ltd., supra*, 213 Cal.App.3d at pp. 1342-1343). We have concluded that the ordinance imposes a regulatory fee, not a tax. (See pt. IV. B.-D., *ante*.) As the state Constitution does not prohibit the ordinance's regulatory fees, the state has impliedly delegated to municipalities the power to impose such fees. Thus, we are satisfied that the ordinance does not violate the Twenty-first Amendment.

F. *Conclusion*

The trial court erred in concluding that CBRC was entitled to a summary adjudication on the third cause of action for declaratory and injunctive relief, based on its claim of unlawful taxation in violation of section 22 of article XX of the California Constitution. As the ordinance does not violate this provision of the state Constitution, the city is entitled to summary adjudication on the third cause of action.

V. Remittitur

Let a peremptory writ of mandate issue directing the Superior Court of Alameda County to vacate its order of January 5, 1995, granting CBRC summary adjudication on the second and third causes of action, and to enter a new order denying CBRC's motion and granting summary adjudication on these two causes of action in favor of the city.

Anderson, P. J., and Poché, J., concurred.

A petition for a rehearing was denied June 17, 1996, and the petition of real parties in interest for review by the Supreme Court was denied August 14, 1996.